**June Carl DOBBINS et al.,
Contestants-Appellants,**

v.

**Alfred R. HUPP, as Executor of the Estate of Cora Fowler, Deceased, Alfred R. Hupp, as Trustee-Legatee, Leonard S. Van Dyke and John P. Huston, Trustee-Legatees, Carlton Knight, as Trustee-Legatee, et al., and John D. Ashcroft, Attorney General, Intervenor-Proponent.**

**Nos. KCD 28609 and KCD 28621.**

Missouri Court of Appeals,
Kansas City District.

Jan. 30, 1978.

Motion for Rehearing and/or Transfer
Denied Feb. 27, 1978.

Application to Transfer Denied
April 10, 1978.

Ike Skelton, Jr., Robert L. Langdon, Lexington, James S. Millett, Kingston, Bradley, Skelton & Schelp, Lexington, for contestants-appellants.

William Aull, III, D. W. Sherman, Jr., Aull & Sherman, Lexington, for respondents.

John D. Ashcroft, Atty. Gen., B. J. Jones, Asst. Atty. Gen., Jefferson City, for intervenor-proponent, attorney general.

Before PRITCHARD, P. J., SWOFFORD, C. J., and DIXON, J.

DIXON, Judge.

This is a suit to contest a joint and mutual will upon the ground of undue influence. The contestants prevailed in the jury trial. The trial court set aside the jury verdict and entered judgment for the proponents. The contestants have appealed. The contestants are the nieces and nephews of the brother and sister who made the will. The proponents are the executor, the trustees under a charitable trust, and the Attorney General of Missouri who intervened because of the nature of the public charitable trust created by the joint and mutual will. A second count of the petition to declare the trust invalid on a variety of grounds was expressly stated to be contingent upon the result of the jury trial to determine the validity of the will and remains pending in the trial court. The stated ground for the trial court's action in setting aside the jury verdict was the failure of the contestants to prove undue influence.[1]

A prefatory statement is necessary before a recitation of the facts in this case. A will contest is an action at law and when the sufficiency of the evidence is challenged, the most favorable evidence rule applies. Therefore, defendants' evidence will be disregarded unless it aids plaintiffs. *Salisbury v. Gardner*, 515 S.W.2d 881 (Mo. App.1974); *Metter v. Janssen*, 498 S.W.2d 581 (Mo.App.1973); *Hemonas v. Orphan*, 191 S.W.2d 352 (Mo.App.1945). It is also the rule that when the trial court has set aside a verdict on the issue of insufficient evidence, only the evidence and inferences favorable to the plaintiff are considered, the evidence offered by defendant to be disregarded unless it aids the plaintiff's case.

This lawsuit concerns the Joint and Mutual Will of Lee Dobbins and Cora Fowler executed on June 1, 1965. Under the terms

---

1. The proponents perfected an appeal from the trial court's order overruling their motion for a new trial. The appeal was formally abandoned in the brief filed.

of the Joint and Mutual Will, the survivor took "all of the property, real, personal and mixed and wherever situate absolutely and in fee simple" and, upon the death of the survivor a charitable trust was created in which the residue of the estate was bequeathed to named trustees "for the benefit of deserving white male Caucasian high school graduates of the Methodist faith" who desired and qualified for study in the ministry. The trust was to be known as the "Dobbins Memorial Fund." A codicil to this will dated September 9, 1969, revoked the privilege to purchase certain real estate given to Howard and Oleta Venable under the terms of the will. It was stipulated by the parties that the Venables had not exercised their privilege to purchase the real estate, and accordingly, the real estate became part of the residuary estate of Cora Fowler. Lee Dobbins died on January 24, 1972, and, about two months later, on March 31, 1972, Cora Fowler died.

The plaintiffs-contestants are the nieces, nephews, grandnieces, and grandnephew of Cora Fowler. Cora was married for a short time but had no children. The defendants-proponents are the executor of the estate of Cora Fowler, Alfred R. Hupp; the trustees of the trust created under the contested will, Alfred R. Hupp, Leonard S. Van Dyke, John P. Huston, and Wesley J. Arington; guardian ad litem, William Aull, III; and the Attorney General of the State of Missouri who intervened as a party.

The will of Cora Fowler was identified by the Clerk of the Probate Court of Saline County, Missouri, as having been admitted to probate. The two attesting witnesses testified that they witnessed Lee and Cora sign the will, that Lee and Cora were both over 18 years of age, and that both were of sound mind and disposing memory. Lee and Cora executed the will in each other's presence.

Cora and Lee, sister and brother, had lived together since moving back from Kansas City to Slater, Missouri, in 1941. In 1944, they moved to the farm where Cora died. They continued living together at the farm until Lee suffered a stroke in February, 1968. After his stroke and for the nearly four years preceding his death, Lee was either in the hospital or in a rest home, except for one interval in 1968.

Cora and Lee were in business together. They were partners owning land and farming. An Authorization of Partnership to open deposit account and to procure loans was signed by both Lee and Cora. This authorization was explained as being "a partnership deal whereby either one of them could come in the bank and transact business for the two of them." Although the authorization was signed on October 19, 1950, it continued in full force and effect through 1964 and 1965. In addition to the Authorization of Partnership, Cora signed a loan guarantee dated 1968 whereby she guaranteed the loans of Lee. Also, Cora signed a loan guarantee for the Farmers Savings Bank making her responsible for any indebtedness Lee created.

Plaintiffs introduced a series of notes beginning in 1960 and continuing through and including 1965. These notes were signed by Lee Dobbins and Cora Fowler by Lee Dobbins or by Lee Dobbins and Cora Fowler individually. At least one note was signed by Lee only.

A number of witnesses testified about the relationship between Cora and Lee. During the years 1960–1965, Lee's treatment of Cora was described as being very demanding and rude. He always told Cora what to do, and she would do it. The testimony relates many specific instances showing the relationship of Cora and Lee. In October of 1965, Cora wanted to buy some cattle, but Lee didn't. Lee said that he was the boss and the cattle were not purchased. Cora was against buying the Shepard farm, but said she had to go along. When Lee bought the Shepard farm, Cora was upset and cried. Cora wanted to get new sidewalks because she might fall, but Lee said they were good enough for him. A new sidewalk was put in after Lee went to the rest home. Cora did not have a TV set at home because Lee would not let her have one, and when she and Lee were visiting their niece, Lee moved a chair in front of the TV so Cora couldn't watch it.

Cora couldn't drive, so when Cora and Lee did the farm work, she would do the walking, and he would do the riding. In 1965, while Lee was driving the pickup truck, Cora was getting up on the running board when Lee drove off. Cora fell backwards and hurt her back. It was necessary to take her to the hospital.

Prior to the execution of the contested will, Cora was described physically as being a small, frail woman. On March 15, 1965, Cora's physician diagnosed her as having an arteriosclerotic condition, a mild case of diabetes, and a little hypertension. At the time of the execution of the will in June of 1965, Cora was in her 70's.

Cora and Lee first contacted their attorneys about making a will in 1961. There were four drafts of proposed wills made during the next four years. These drafts show the various changes made during this period. In the first draft, the designated name of the trust was the "Cora Fowler—Lee Dobbins Memorial Trust," and, in all subsequent drafts, it was changed to the "Dobbins Memorial Fund." In the first draft, June Dobbins, Cora's nephew, was a named beneficiary, and in all four drafts Mattie Motzel, Cora's niece, was a named beneficiary. Neither June, nor Mattie was named beneficiary in the executed will. Blacks were included in the trust provision of the first draft, but were excluded in the executed will. The trust provision of the first draft provided for boys and girls to be eligible, but only "males" were eligible under the final trust provision.

Lee had a falling out with Leo Motzel, Mattie's husband, on April 22, 1965, over putting in a fence. While this episode ended the relationship between Leo and Lee, Leo and Cora had no ill feeling between them. Leo and Mattie got along with Cora.

Evidence concerning Lee's attitude toward blacks was presented. Lee referred to blacks as "damned nigger." At June Dobbins' house, Lee refused to eat dinner with a black man, saying that "he wasn't eating dinner with no nigger all he was going to pay was $5.00 a day." Cora, on the other hand, did not speak illy or badly about blacks.

After Lee was placed in the nursing home, Cora told June Dobbins and Warren Kiso, an insurance agent, on two separate occasions that she had the power of attorney and she was going to change her will.

After Lee died, Cora said that she had done everything Lee had ever asked her to do, but now that the business was all hers, she was going to do as she pleased with it. Cora told Walter Fizer, her nephew, that he was in her will and that if June Dobbins didn't keep his boy away from her, she would completely cut him out of her will. Helen Fizer overheard Cora's conversation with Ethel Hupp, a neighbor, with whom Cora was speaking on the telephone. During the telephone conversation, Cora said that she wouldn't leave June a cent if he didn't keep his son from bothering her.

Marion Fizer, Cora's nephew, testified that Cora told him the church had been "dingdonging" her for another donation, but having made a sizeable donation to the Methodist Church, Cora felt they had done their part. Cora and Lee had given the church about $12,000, and Cora didn't think she needed to "leave them anymore." There was evidence that when the executor was reading the will to the relatives he related a statement by Lee Dobbins to the effect that "no damned nigger would get a cent of his money."

■ The parties are in agreement with respect to the governing rule in will contest cases concerning a presumption of undue influence. Three elements are required before the presumption arises: (1) confidential or fiduciary relationship; (2) the existence of a substantial benefit to the fiduciary; and (3) activity by the fiduciary which resulted in procuring the execution of the will. *Salisbury v. Gardner, supra,* 515 S.W.2d at 884; *Simmons v. Inman,* 471 S.W.2d 203 (Mo.1971); *Baker v. Spears,* 357 Mo. 601, 210 S.W.2d 13 (1948). The parties have briefed and argued the case on the theory that, if the evidence is not sufficient to create a presumption, the trial court's action should be affirmed; but *if* the pre-

sumption arises, then the trial court is in error.

Definitions of the three elements of the presumption have been given by various courts. A confidential relationship is said to arise when one relies upon and trusts another in regard to handling property and business affairs. *Davis v. Pitti*, 472 S.W.2d 382 (Mo.1971). Benefaction has been defined as, " 'some pecuniary benefit to be derived, directly or indirectly, under the will' by the fiduciary by whose activity the testator is influenced to make the will." *Baker v. Spears, supra*, 210 S.W.2d at 19, citing *Barkley v. Barkley Cemetery Ass'n.*, 153 Mo. 300, 54 S.W. 482, 486 (1899). Undue influence consists of such overpersuasion or coercion that the will of one person is substituted for the free will of the other. *Steller v. Steller*, 401 S.W.2d 473 (Mo.1966). Circumstantial evidence, from which it may be inferred that the fiduciary was in some way active in procuring the execution of the instrument, is permitted to show the exercise of undue influence. *Godsy v. Godsy*, 504 S.W.2d 209 (Mo.App.1973).

On the basis of this settled law, the respondents attack the evidentiary support of all three elements. The executor and trustee proponents concede that a fiduciary relationship exists and argue only the other two elements. The Attorney General, however, does not concede that a fiduciary relationship exists in this case.

Turning first to the issue of the existence of the fiduciary relationship, the evidence here is sufficient to show that Cora Fowler relied upon and trusted her brother Lee Dobbins, in regard to the handling of property and business affairs. They operated as a farm partnership in which Lee Dobbins was unquestionably the manager, and the documentary evidence indicates that Lee Dobbins almost habitually signed notes evidencing the partnership indebtedness on behalf of Cora Fowler. Cora Fowler executed open-ended loan guarantees which existed over a period of many years. The proof must be taken to be sufficient to establish a confidential relationship. *Wilhoit v. Fite*, 341 S.W.2d 806 (Mo.1960).

Upon the third element, relating to the activity of the fiduciary in procuring the execution of the will, both the Attorney General and the executor and trustee respondents argue that the evidence is insufficient to support that element. Undue influence is not proclaimed from the housetop and direct proof is difficult, if not impossible, to obtain. The rule arises that the fact may be proven by circumstantial evidence. *Pasternak v. Mashak*, 392 S.W.2d 631 (Mo. App.1965). *Simmons v. Inman, supra*, recites several factors which have been considered in various cases as providing factual proof of circumstances from which an inference of active procurement in the execution of the will by the exercise of undue influence arises. Among these factors are evidence of power to influence the maker of the will, the opportunity to do so, an unnatural disposition of property, and a change from a former will. The presence of the fiduciary at the execution of the will and the exertion of his influence at the exact moment of execution need not be shown. *Salisbury v. Gardner, supra; Pulitzer v. Chapman*, 337 Mo. 298, 85 S.W.2d 400 (1935).

The arguments of both the Attorney General and the executor and trustees are entirely factual on this issue. The Attorney General submits the issue by adopting the argument of the executor and trustees. An examination of the factual arguments made shows that they rely upon evidence produced by the proponents. Proponents offered the testimony of the attorney-draftsman of the will, and they urge it as uncontradicted evidence showing that Cora Fowler was not subject to undue influence. The difficulty with this argument is that *Ogden v. Toth*, 542 S.W.2d 17 (Mo. App.1976), makes it clear that in the procedural posture of this case the defendants' evidence is to be disregarded unless it aids the plaintiffs' case. The remainder of the argument addressed to this branch of the case by the proponents of the will is an analysis of the inferences that may be drawn from the evidence. The proponents

point out that the influence favorable to the verdict is not the only possible inference and that other inferences favorable to the proponents are as reasonable and logical. Again, the simple answer is that in considering the question of whether a submissible case has been made, after verdict, the favorable inference to support the verdict will be indulged. *Salisbury v. Gardner, supra,* 515 S.W.2d at 883. The same rule applies where the verdict has been set aside and the issue is whether the trial court's action is proper. *Ogden v. Toth, supra.*

The final issue to be determined, and the pivotal one on this appeal, is whether the fiduciary in this case obtained a benefit from the execution of the will. The Attorney General argues cases involving gifts to churches in which a religious leader had influenced the gift as being determinative, relying upon the general language of those cases that where the influence flows from a person who does not benefit directly from the influence, it does not raise a presumption of undue influence. Those cases are factually distinguishable from the issues here at hand as will be developed in the subsequent analysis of this issue. The executor and trustee proponents argue that even though Lee Dobbins, if he had survived Cora, would have received the property absolutely and in fee simple that this was nothing more than he would have received if there had been no will since all of the property was held jointly with the right of survivorship.

 It is axiomatic that the question of whether a benefit flows to the fiduciary is to be measured by the circumstances existent at the time of the execution of the will. In considering whether a benefit to the fiduciary existed in this case, the situation of the parties and their property at the time is an important consideration. In that regard, the relationship between the joint and mutual will and the jointly held property as well as the contractual provisions in this will need be considered.

In *Owens v. Savage,* 518 S.W.2d 192 (Mo. App.1974), the court pointed out that Missouri subscribes to the orthodox view that wills are revocable although there has been an agreement not to revoke, but that the agreement not to revoke gives rise to a contract evidenced by the will which is enforceable in equity. The *Owens* opinion refers to the "miscegenation of the law of contracts and the law of wills" which occurs when some courts call such wills irrevocable and which results from the faulty analysis of the principles involved. *Owens v. Savage, supra,* at 200. Absent the contractual language existent in this will, the joint and mutual will would have been revocable by Cora Fowler.

 Considering now the state of the parties' property at the time that the will was executed, the evidence discloses that all of the property of Cora Fowler and Lee Dobbins was held as joint tenants with the right of survivorship. Despite the contingent right to obtain a fee simple absolute upon the death of the other joint tenant, rights existed in both of the joint tenants to dissolve the jointure. Partition would lie under Section 528.030 RSMo 1969. *Jennings v. Jennings,* 225 Mo.App. 1010, 33 S.W.2d 165 (1930). So also, a conveyance by one of the joint tenants prior to the death of either will defeat the right of survivorship and will create a tenancy in common between the remaining joint tenant and the grantee in the deed. *McClendon v. Johnson,* 337 S.W.2d 77 (Mo.1960). The specific question of whether property held in joint tenancy which is the subject of a contractual will containing a promise not to revoke can be conveyed after the execution of the will has been answered in Missouri with respect to estates by entirety. *Stewart v. Shelton,* 356 Mo. 258, 201 S.W.2d 395 (1947). There, land was owned by a husband and wife. The marriage partners executed a joint and mutual will giving the survivor full enjoyment of the property so long as he or she lived and, on the death of the survivor, the property was to be divided equally between the husband's and wife's brothers and sisters. The will contained contractual provisions concerning nonrevocation. After the death of the husband, the wife conveyed to her brothers and nephews,

excluding the brothers and sisters of the husband. The court affirmed a judgment setting aside the deeds in question.

In the instant case, Lee Dobbins thus acquired a substantial benefit upon the execution of the contractual will. Prior to the execution of that will, Cora Fowler could have conveyed her interest in the substantial property which they owned jointly. The effect of that conveyance would be to destroy the right of survivorship in Lee Dobbins. She could have also partitioned the property and removed the expectancy of Lee Dobbins to obtain it on survival. The whole thrust of the evidence relating to undue influence in this case goes to the establishment of the trust. The evidence tends to show that Lee Dobbins influenced the creation of a trust which was not the true will and intent of Cora Fowler. Cora Fowler gave up her right to control of her half interest in the property and Lee Dobbins acquired by the joint and contractual will the power to dispose of the entire estate with no uncertainty as to his survival or the continuation of the title in joint tenancy.

Assuming, as the evidence and the jury verdict require, that his influence procured the particular disposition made, the effect of the execution was to confer upon him the benefit of devising all of the property and not one-half. As *Owens* teaches, what is here involved is the contractual portion of the will. That contract conferred upon Lee Dobbins a pecuniary benefit, survival became unimportant, and Cora's right to assert any real ownership interest by way of disposition was erased. That benefit is sufficient to raise the third element in this case. Once the elements of the presumption of undue influence exist in the case, the issue is submissible. *Loehr v. Starke*, 332 Mo. 131, 56 S.W.2d 772 (Banc 1932).

The issue being submissible, the trial court erred in setting aside the verdict of the jury on the grounds of insufficiency. This cause is reversed and remanded to the trial court with directions to reinstate the verdict of the jury finding that the will of Cora Fowler was procured by undue influence and denying the same admission to probate.

All concur.