Martha Crenshaw SMITH, Appellant,

v.

H. Marshall CHATFIELD, St. Paul's Episcopal Church, and Blanche Crenshaw, Respondents.

No. WD 39251.

Missouri Court of Appeals, Western District.

Dec. 22, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1988.

Application to Transfer Denied March 15, 1988.

Martin M. Meyers of Campbell & Meyers, Kansas City, for appellant.

Reed O. Gentry and David F. Oliver of Field, Gentry, Benjamin & Robertson, P.C., Kansas City, for Chatfield (only respondent represented on appeal).

Before CLARK, P.J. and TURNAGE and MANFORD, JJ.

MANFORD, Judge.

This is a civil action in the nature of a contest of a will. The judgment is reversed and the cause is remanded with directions.

Appellant formally presents two points, one of which is subdivided, but due to the disposition of the matter by this court, only a single issue is considered. This sole issue, as alleged by appellant, is as follows: The evidence, when viewed most favorably for appellant, established that respondent Chatfield was active in causing or assisting to cause the execution of the will and codicil.

This action commenced by petition, naming appellant, Martha Crenshaw Smith (hereinafter Smith), as plaintiff. Respondent H. Marshall Chatfield (hereinafter Chatfield) was named as a defendant, along with Blanche Crenshaw and St. Paul's Episcopal Church, co-defendants. Blanche Crenshaw never filed any answer or other responsive pleading. St. Paul's filed an answer but did not participate in the trial.

The challenge was to a will executed on May 6, 1980 by the decedent, Martha Pearl Crenshaw. Smith is the grand-niece of the decedent Crenshaw. The challenge to the will was predicated upon alleged undue influence exercised by Chatfield over the decedent.

The record reveals that the decedent and Chatfield were formerly co-workers in the legal department of the Kansas City Life Insurance Company. Chatfield, at the time of trial, remained an employee of Kansas City Life Insurance Company as Senior Vice President and Secretary, having gained that position after years of service within the legal department of the company.

The record reveals that decedent started to work for the company as a secretary, but shortly thereafter, gained a legal education, became a member of the Bar, and was then placed in charge of the city-loan operation for the company. The decedent worked for the company nearly forty years prior to her retirement. During a period of years following the retirement of decedent, Chatfield handled several matters for the

decedent in the capacity as her attorney. The record discloses that prior to the will which is the subject of this litigation, Chatfield, at decedent's request, prepared a will for her in 1975.

It should be noted that the capacity of the decedent to execute the disputed will and codicil was never in issue. The record discloses the execution of the will and codicil and the filing of same for probate.

In 1979, decedent contacted Chatfield and stated that she wanted to draw up a new will and to provide Chatfield with an unspecified bequest. According to Chatfield, he advised the decedent that since she desired to make a bequest to him, he could not draft the will. Chatfield stated that decedent desired someone at the Kansas City Life Insurance Company to draw it up.[1] Chatfield told the decedent to contact either James Aldrich or James Slusher, both of whom were attorneys for Kansas City Life Insurance Company and who were directly under the supervision of Chatfield.

The evidence as to whether the decedent disclosed which attorney she intended to contact was in conflict. Chatfield stated that the decedent did not disclose to him which attorney she was going to see. Attorney Aldrich, on the other hand, testified that Chatfield told him (Aldrich) that the decedent would be contacting him (Aldrich) about a will. Aldrich prepared a will for decedent in 1979. This was the first time Aldrich had ever represented the decedent in any legal matter. This will provided the following bequests: (a) $10,000.00 to Blanche Crenshaw, who was the wife of decedent's brother, Bransford Crenshaw; (b) $5,000.00 to Chatfield; (c) $2,000.00 to appellant Smith, and $2,000.00 to Smith's brother; (d) $1,000.00 to the church; and (e) the residuary of her estate to her brother, Bransford Crenshaw, if he survived; otherwise the residual of that estate was to go to appellant Smith and Smith's brother.

Following decedent's retirement, a close relationship between her and Chatfield had developed. It was never disputed that in addition to this personal relationship, there also existed a fiduciary relationship between the decedent and Chatfield. There also was no dispute that Chatfield, because of this relationship, knew the nature and extent of the decedent's property.

The 1979 will was executed by decedent at the Sharondale Nursing Home, where she resided. Aldrich went to the nursing home by using a map prepared by Chatfield. This 1979 will was witnessed by Aldrich and one Carolyn Kalwei, secretary to Chatfield. Chatfield took possession of the 1979 will after the decedent had executed it.

In April, 1980, Chatfield was promoted to Secretary and Vice-President of Kansas City Life Insurance Company from his position as General Counsel. In this new position, Chatfield had responsibility in the selection of company officers. Aldrich was a company officer.

Decedent's brother, Bransford Crenshaw, died April 22, 1980.

On May 6, 1980, the decedent executed a new will. This new will provided the following bequests: (a) Blanche Crenshaw—$5,000.00 (a reduction of $5,000.00 from the 1979 will); (b) $1,000.00 to the church; and (c) the residuary estate to Chatfield. Aldrich stated that he drew the 1980 will at the direction of the decedent. This 1980 will was executed in Chatfield's office. There is some evidence that Chatfield was present at the execution of the 1980 will. This came about through the deposition testimony of Michele Berra, who at the time was legal secretary to Aldrich and was a witness to the 1980 will. Chatfield took possession of the 1980 will after execution by the decedent.

Aldrich was unaware of the relationship between the decedent and Chatfield. Aldrich stated that he did not inquire as to why the decedent was leaving the residuary estate to Chatfield, and that decedent did not disclose anything to him in that

---

**1.** It appears from the record that attorneys for Kansas City Life Insurance Company are permitted to handle private legal matters for fellow employees and others with or without compensation so long as such endeavors do not hinder their duties with the company.

regard. Aldrich further stated that he did not know the nature and extent of the decedent's property. The value of the decedent's property at the time of her death was put at $143,000.00. That value had increased to about $170,000.00 by trial time. Aldrich also disclaimed having advised the decedent relative to her will or the two subsequent codicils.

The 1979 will prepared by Aldrich bore a stamp revealing that Aldrich had drawn the instrument. The 1980 will bore no such stamp. The first codicil, considered *infra*, did bear Aldrich's stamp. The 1980 will and the second codicil, considered *infra*, to the 1980 will bore no such stamp. The custom and practice of executing wills was to complete the execution in the office of the attorney who prepared the will.

On July 28, 1981, the decedent executed her first codicil to her 1980 will. This codicil reduced the bequest to Blanche Crenshaw to $500.00 (down from $5,000.00 as per the 1979 will). On September 25, 1981, the decedent executed a second codicil to her 1980 will. In this codicil, the 1980 will was included, the first codicil revoked, and the bequest to Blanche Crenshaw was eliminated in its entirety. This second codicil to the 1980 will was witnessed by one Ann Pouche, a secretary in the legal department of Kansas City Life Insurance Company and by Carolyn Kalwei, secretary to Chatfield.

Between 1974 and the year of decedent's death, 1984, Blanche Crenshaw had a continued relationship with the decedent, and following the death of Bransford Crenshaw in 1980, the two grew even closer in their relationship. As noted *supra* by way of the executed will and codicils, the bequest to Blanche Crenshaw went from $10,000.00 to such bequest being eliminated entirely.

Between the years 1979–1980, the evidence, by way of medical records, revealed that the decedent was regularly forgetful and, in 1982, revealed a progressive mental deterioration existing for a year or two previously.

In 1982, the decedent became critically ill. She was not expected to survive. Chatfield testified that he attempted to contact decedent's relatives through Blanche Crenshaw. Blanche Crenshaw testified that she had the telephone number of David Smith, father of appellant Smith and her brother. Blanche Crenshaw also testified that Chatfield never attempted to contact the decedent's family by contacting her.

The decedent was hospitalized in early 1984 and ultimately died some fifteen days later. Chatfield claimed he attempted to again contact the decedent's relatives through Blanche Crenshaw and this alleged contact was again denied by Blanche Crenshaw.

There was evidence that Chatfield had gone, following the death of decedent, to her (decedent's) residence for the gathering of decedent's property. He explained that he destroyed various cards, letters, and photographs which had been the property of the decedent.

During trial, Smith, as an admission against Chatfield, read the following interrogatory propounded to Chatfield and answered by him: "Do you contend Martha Pearl Crenshaw had a motive or reason to exclude Martha Crenshaw Smith and David B. Smith as beneficiaries under the will and codicil described in plaintiff's petition.?" The answer by Chatfield was, "No."

Further evidence included testimony of David Smith and appellant Smith regarding their relationship with the decedent. This relationship consisted of contacts by telephones, cards, and newsletters two or three times per year and on holidays. Both of these witnesses admitted their contact was not as good as it should have been, but nevertheless, each testified there was contact between them and decedent.

After overruling respondents' motions for directed verdict, the trial court submitted the case to the jury. The jury returned its verdict, signed by all twelve jurors, which read:

We, the undersigned jurors, find that the will of May 6, 1980 and codicil thereto of September 25, 1981, are not the last will and testament of Martha Pearl Crenshaw.

Chatfield filed his post-trial motion for new trial or in the alternative, for judgment notwithstanding the verdict. This alternative motion was argued and the trial court entered its judgment N.O.V. to Chatfield's favor. This appeal followed. Any additional facts deemed applicable are set forth *infra*.

There is no dispute between the parties on the following matters:

(a) The decedent had the capacity to execute the 1980 will and the two codicils.

(b) There existed a fiduciary relationship between the decedent and Chatfield.

(c) Chatfield, pursuant to the 1980 will and both codicils, received a substantial share of decedent's estate as a result of the residuary clause.

Disposition of this matter rests upon whether appellant's evidence sufficed as to create a presumption of undue influence, thus establishing a prima facie case submissible to the jury and/or whether there was direct evidence sufficient to support a prima facie case for submission. The second part of the foregoing question is not reached because of the disposition herein.

In will contest actions premised upon undue influence, a presumption of undue influence arises if the evidence of the contestee discloses and supports, "(1) a confidential or fiduciary relationship existed between the testator and a beneficiary; (2) the beneficiary has been given a substantial benefit by the will; and (3) the beneficiary caused or assisted in causing the execution of the will." *Disbrow v. Boehmer*, 711 S.W.2d 917, 925 (Mo.App.1986), citing to *Kaiser v. Pearl*, 670 S.W.2d 915, 918 (Mo.App.1984).

In the present case, Chatfield concedes the existence of (1) and (2) above. Attention therefore focuses upon the third element necessary for creation of and hence the right to rely upon the presumption. Thus, the determination must be made as to whether appellant's evidence is probative and supportive of Chatfield's having caused or assisted in the execution of the 1980 will and codicils of the decedent. If that evidence is of a probative and support-

ive nature, then the presumption arises, thus creating a prima facie case which will withstand a motion for directed verdict and a motion N.O.V.

■ Before considering the specifics of the above question, this court notes the following. When the trial court conducted the hearing on the post-trial (alternative) motion of Chatfield, the court announced to counsel for the parties that it had expressed prior reservation to counsel about submitting the case to the jury and did so only because Chatfield had been shown by the evidence to have had a supervisor capacity over Aldrich. This court, as will be observed *infra*, concludes that the trial court either ignored or overlooked other evidence which bore on the question. In addition, it is observed from the record that the sudden change in the disposition of the property by the decedent was, according to the trial court, attributable to only one cause, to wit: the death of decedent's brother. The trial court declared in its order sustaining the motion for judgment N.O.V. the following:

A sudden change in disposition in this case was caused by the death of the only relative which the evidence indicated had any close relationship with the Testatrix, the brother, Bransford Crenshaw. His sudden death is the precipitating cause for the change from a prior disposition.

This court concludes that the trial court either overlooked or ignored other evidence on the question of sudden change in the disposition of decedent's property. In the first instance, the record reveals evidence of a relationship between decedent, David Smith, and appellant Smith. The 1975 will of decedent provided that the residuary estate should go to decedent's brother if the brother should survive the decedent; but if he failed to survive, the residuary estate would then go to appellant and her brother. There is no evidence upon this record which reveals that the decedent made a sudden change of disposition of her property because of the death of her brother. The only fact bearing on that question was evidence of the brother's death in the early part of 1980, and the execution of the

1980 will some few weeks later. In her 1975 will, the decedent had provided for successors to the residuary estate in the event of her brother's death prior to her own. There is no evidence to support the foregoing conclusion reached by the trial court on the question of sudden change of disposition of property by the decedent.

As the cases have noted, circumstantial evidence may be introduced to provide factual proof of circumstances from which an inference of active procurement in the execution of the will by the exercise of undue influence arises. The various factors which the cases have noted are "evidence of power to influence the maker of the will, the opportunity to do so, an unnatural disposition of property, and a change from a former will." *Dobbins v. Hupp*, 562 S.W.2d 736, 741 (Mo.App.1978).

Attention is now directed to evidence bearing on the initial question set forth *supra*. It is noted that Chatfield disclaimed any participation or activity regarding the 1979–1980 wills and the two codicils. The evidence suggests a contrary conclusion.

First, the record reveals that Chatfield gave decedent the names of two attorneys, both of whom were subordinates to Chatfield within the company's legal department. The evidence, by testimony of Aldrich, reveals that Chatfield advised Aldrich that the decedent would be contacting him (Aldrich) for purposes of a will revision. Chatfield drove two witnesses to the nursing home where decedent resided. These witnesses were Carolyn Kalwei and Ann Pouche. The document witnessed by both of these witnesses was the second codicil to the 1980 will, and witness Ann Pouche stated that she only witnessed one document executed by the decedent. The conclusion which must be reached is that Pouche witnessed the execution of the codicil and Chatfield took the witnesses to decedent for the purpose of execution of the codicil.

The 1980 will was executed by the decedent in Chatfield's office. One witness, Michele Berra, testified that at the execution of the 1980 will, she thought Chatfield was present, although under cross-examination she stated she was not certain of Chatfield's attendance. Her testimony of the execution of the 1980 will in Chatfield's office certainly supports an inference that he was present, particularly when coupled with the witness's (Berra's) impression that Chatfield was present. The evidence is uncontradicted that Chatfield took possession of the wills and codicils after execution by the decedent.

The entirety of the evidence and the discussion relative to Chatfield's presence at the time the disputed will and codicils were executed is of no real import regarding Smith's having made a submissible case. It has been ruled, "The presence of the fiduciary at the execution of the will and the exertion of his influence at the exact moment of execution need not be shown. *Dobbins v. Hupp, supra*, 562 S.W.2d at 741, citing to *Salisbury v. Gardner*, 515 S.W.2d 881 (Mo.App.1974).

Through the testimony of Aldrich, it was learned that he provided no advice to the decedent regarding her testamentary disposition. The inference that was created is that the wills and codicils were prepared for the decedent in circumstances and surroundings devoid of wholly disinterested persons. *Simmons v. Inman*, 471 S.W.2d 203, 207 (Mo.1971).

It is suggested by appellant that there was sufficient, direct, and circumstantial evidence to support the submission of the case to the jury without reliance or support from the presumption. The evidence upon this record strongly supports appellant's position, but it is not necessary to reach that issue herein because appellant's evidence was of such a probative nature as to support the creation of a presumption of undue influence which alone established a prima facie case warranting submission of the case to the jury.

In reviewing the evidence upon the sole question of whether the evidence established that Chatfield was active in causing or assisting in the execution of the wills and codicils, this court reviews only the direct and circumstantial evidence, and all favorable inferences therefrom, which is favorable to the verdict of the jury. *Dob-*

*bins, supra.* Chatfield's evidence, except where it aids appellant's case, is to be disregarded. This is so because of the post-trial action by the trial court in entering a judgment N.O.V.

This court concludes, by following the rule in *Dobbins, supra,* and considering the evidence introduced by appellant Smith, that such evidence established Chatfield's power to influence the decedent. Chatfield had the opportunity to do so, there was a change from the former will which included an unnatural disposition of property and Chatfield caused or assisted in causing the execution of the will and codicils. Such evidence was of sufficient probative value that there arose a presumption of undue influence, thus requiring the submission of this cause to the jury.

The trial court, under the facts and circumstances herein, erred in entering its post-trial order of judgment notwithstanding the verdict. That judgment is reversed. This cause is remanded to the trial court with directions to enter judgment for appellant in full accordance with the jury's verdict.

All concur.