**David BRANDHORST, Respondent,**

v.

**CARONDELET SAVINGS AND LOAN ASSOCIATION, Appellant.**

No. 43560.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 1, 1981.

---

2. The separate motions of Larry, Juanita and Robert to dismiss Delina's appeal, taken with the case, are hereby denied.

Gene W. Elkin, St. Louis, for appellant.

Benson Cytron, House Springs, for respondent.

CRIST, Judge.

This is an action by Brandhorst for conversion of money. Brandhorst received a jury verdict for actual damages of $1,035.92 and for punitive damages of $2,500.00. Carondelet appeals on the ground that it was entitled to a directed verdict at the close of all the evidence. It does not question the sufficiency of the evidence as to punitive damages except insofar as it was entitled to directed verdict. We affirm.

■ The basal subject of inquiry is whether Brandhorst demonstrated a cause of action for conversion. In adjudging whether a submissible case was made, we comprehend all evidence and inferences therefrom in favor of Brandhorst. *Fleischmann v. Mercantile Trust Co. Nat. Ass'n*, 617 S.W.2d 73 (Mo.banc 1981).

On May 24, 1978, Brandhorst's mortgage loan, obtained from Carondelet was three months in arrears. Carondelet's house counsel sent a letter informing Brandhorst that the maturity date of the note was being accelerated and that all unpaid indebtedness was immediately due and payable. This missive, however, was returned to Carondelet by the post office on June 11 marked as unclaimed.

On June 5, Brandhorst, apparently unaware of the aforementioned letter, went to Carondelet's South County branch and attempted to make the mortgage payments by a check drawn on his personal business account, that of B & D Remodeling Contractors. The teller refused to accept the check and informed him that he would have to pay cash. Brandhorst then went to his own bank, cashed the check and returned to Carondelet to make the payment. He received a receipt for the cash containing his loan number. The teller took the money and made out American Express Money Orders payable to the order of Carondelet as a means of transferring the money from the branch to the main office.

With a letter dated June 6, over the signature of Carondelet's loan officer, the two money orders were mailed to Brandhorst. The letter stated that his loan was accelerated and the foreclosure would follow.

By letter dated June 19, Brandhorst's attorney returned the money orders, which were payable to the order of Carondelet, to Carondelet. The letter included the statement "I cannot imagine why the letter dated June 21, returned the money orders to Brandhorst's attorney and in the letter stated "[p]lease do not waste our time in returning these money orders again."

In the letter of Carondelet to Brandhorst's attorney, dated June 22, the loan officer stated "[t]hank you for not returning the money orders again." Brandhorst was able to obtain other financing and paid his debt to defendant, but did not receive credit for the $1,035.92. At no time did Carondelet offer Brandhorst anything but the money orders.

■ Carondelet claims that it was entitled to a directed verdict at the close of all the evidence, but there is no record that Carondelet ever moved for such a verdict at that time. The record does contain an oral motion for directed verdict made by Carondelet after Brandhorst had presented his evidence, but the trial court overruled the motion and Carondelet proceeded to present evidence. Absent such a motion for directed verdict, as required by Rule 72.01(a), Carondelet's postverdict motion for judgment n.o.v. is without basis and preserves nothing for appellate review. *Christ v. Rice*, 578 S.W.2d 319, 322 (Mo.App.1979). This point can only be reviewed as plain error. *MAJ Inv. Corp. v. Wersching*, 612 S.W.2d 364, 365 (Mo.App.1980). This review is made more difficult by the fact that neither party submitted Instruction Number Five, the verdict-directing instruction,

which, according to the transcript, does not conform to any of the Missouri Approved Instructions. We are not positive, therefore, that the case was submitted to the jury on a conversion theory. It seems, however, from the briefs, from the legal file and from the transcript of oral arguments before the trial court that this was the case and we will proceed on this assumption.

Carondelet's claim that it was entitled to a directed verdict is based on numerous grounds, the first of which claims that money cannot be converted. It is true that conversion does not customarily lie for money represented by a general debt. However, the rule is otherwise as to funds placed in the custody of another for a definite application and their misappropriation makes the holder liable in conversion. *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo.1981). Brandhorst's handing over of the money to Carondelet did not create a debt as it would if he was depositing the money in an account. See *Fleischmann v. Mercantile Trust Co. Nat. Ass'n., supra* at 74. Rather, Brandhorst, seeking to pay off a debt, placed the money in the teller's custody for that specified purpose. Carondelet did not apply the money, converted into the money orders, to the loan as directed by Brandhorst. Carondelet's point is ruled against it.

Carondelet next asserts that Brandhorst failed to plead or prove that it exercised dominion or control over the money. Brandhorst did not use this terminology in his petition, but did allege that Carondelet, by purchasing the money orders and failing to apply the money to the loan, "did thereby deprive the plaintiff of the use" of the money. Brandhorst was only required to plead and demonstrate an acquisition of the money by Carondelet evidencing a claim of right in conflict with that of Brandhorst. *Houston v. Columbia Fed. Sav. & Loan Ass'n.*, 569 S.W.2d 211, 214 (Mo.App.1978). There can be no doubt that the proof of Carondelet's purchase of money orders with the money, done to enable transfer between offices, satisfied this requirement, as did the quotation from Brandhorst's petition.

Carondelet's third point is that Brandhorst failed to make a demand for the return of the money. This point is without merit. A demand is only one of three ways to prove a conversion, it is not required to find a conversion. *Breece v. Jett*, 556 S.W.2d 696, 709 (Mo.App.1977); *Houston v. Columbia Fed. Sav. & Loan Ass'n., supra.* Further, the money orders were returned to Carondelet by Brandhorst's attorney with the request that the money be applied as intended. If, as Carondelet suggests, demand for return were a prerequisite to bringing a conversion action, the measures taken by Brandhorst's attorney would satisfy such requirement.

Carondelet's final contention is based upon § 400.3–201, RSMo 1978. This section of the Uniform Commercial Code discusses a transferee's right to have an instrument endorsed by the transferor. Carondelet claims that since Brandhorst had the right to force it to endorse the money orders, the money had not been converted. This argument, however, falls short of the mark, for the statute only gives Brandhorst the right to bring an action to get Carondelet's endorsement so he can obtain his money. Section 400.3–201 does not put him in any better position. In the case of an ordinary chattel, a plaintiff can bring a replevin action to force the return of the actual property. It would be absurd to say that this right to bring a replevin action forecloses the bringing of an action for conversion. So here too, the right conferred by § 400.3–201 does not prevent Brandhorst from bringing an action for conversion of his money.

We find no manifest injustice. Accordingly, we must affirm the judgment. Judgment affirmed.

REINHARD, P. J., and SNYDER, J., concur.