**In the ESTATE OF Elsie STANLEY, Deceased.**

**Ray STANLEY, Respondent,**

v.

**Dennis STANLEY and Sue Stanley, et al., Appellants.**

**No. WD 33305.**

Missouri Court of Appeals, Western District.

July 5, 1983.

Michael J. Svetlic, Kansas City, for appellants.

David Baird, Maryville, for respondent, Rosalee Zahnd, Administratrix.

Larry L. Zahnd, Zahnd, Dietrich & Ross, Maryville, for respondent, Ray Stanley.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

SHANGLER, Presiding Judge.

The administratrix Zahnd had a jury verdict on a petition to discover assets against Dennis Stanley [son of decedent Elsie Stanley] and wife Sue for property obtained from the mother by undue influence. The defendants Stanley, husband and wife, contend on appeal that the evidence was insufficient to support the fact of undue influence. They concede that there was a confidential relationship between themselves and the mother at the time of the transfer of the funds, but that such influence as was engendered was not undue but from natural affection.

The decedent mother Stanley and her husband operated a farm. When her husband died in 1964, the mother and one of her three sons worked the farm personally or by lease to other farmers. In year 1971, the son Dennis and his wife [defendants] moved close to the mother. From that time, the three of them—mother, son and daughter-in-law—farmed the land together. A joint tenant survivorship account was established in all three names at the request of the mother for the farm operation. The proceeds were shared among them. In the course of the years, son Dennis did more of the actual work, and the mother came to rely upon son Dennis to conduct the details of the farm business. The son Dennis and wife Sue came to occupy a position of trust as to her personal finances as well. As early as year 1965, their names were added for access to her safety deposit box. Then, in 1977, about the time the mother was admitted to the hospital, son Dennis and wife Sue were added as signatories to the checking and savings accounts the mother owned with the Nodaway Valley Bank. The mother was readmitted to three hospital stays during 1979, in which year she

died. In these interstices, the mother returned home to stay with Dennis and Sue who cared for her needs. They wrote checks to pay for her bills and the mother signed them.

In the spring of 1979, before her death, the mother was committed to a hospital in Omaha, Nebraska, where she submitted to surgery. Upon release, she again stayed with Dennis and Sue. The next day, the mother was visited by Wesley Mains, brother-in-law and executor of the estate of Myrtle Rohlfs, her sister. Mains delivered to the mother a check for $19,500, her distributive share of the Rohlfs estate. The mother endorsed the check for Mains to deposit in her sole name in a Clarinda, Iowa bank for monthly income. Mains took the check with him for that purpose, but the next morning, he received a telephone call from son Dennis to return the check to his mother. [Dennis had told the mother that the money would earn as much interest in a local bank as in the Iowa depositary.] Mains returned the check to the mother that same day. Her only explanation, according to the Mains testimony, was that "Dennis decided that she [the mother] wanted her check put in a bank at Maryville." Mains testified also that while the mother was still in the Omaha hospital, Sue telephoned to request him to release the inheritance check to son Dennis and herself. Mains refused since she could furnish no power of attorney for that transaction. Sue Stanley denied that she made such a request.

A few days after Mains returned the check to the mother—on March 28, 1979—the mother, son and daughter-in-law went to the Nodaway Valley Bank where the mother purchased a $10,000 certificate of deposit in the names of Elsie [mother], Dennis and Sue as joint owners. The mother then discharged a note she owed the bank and the remainder of the inheritance check—some $9,000—the mother deposited in a savings account, an account already titled in joint tenancy with the son and his wife.

When the mother died, the certificate of deposit was in her safety deposit box. Those funds were spent by Dennis and Sue. The son and wife then withdrew the sum in excess of $8,000 which remained in the savings account. The son testified that he and his wife believed the money was theirs as joint survivors. He admitted that his deposition testimony was that it was the intention of the mother that the money be divided among the three sons—Dennis, Ray and Maurice.

The son and wife acknowledge that the mother reposed a confidence in them. They farmed her land together, they shared bank accounts as joint tenants with rights of survivorship, each had access to her safety deposit box, and relied upon one another for business decisions. The evidence, indeed, proved a relation of trust and reliance between them as to her property. *Wilhoit v. Fite,* 341 S.W.2d 806, 813[5–6] (Mo.1960). The son and wife rightly argue that a confidential relation does not *ipso facto* prove undue influence. Nor does the law regard a beneficence by a mother upon a devoted child prompted by natural affection as a bestowal induced by an untoward influence. *Obermoeller v. Speck,* 544 S.W.2d 21, 23[2, 3] (Mo.App.1976). Where, however, a party in a relation of trust to another, by active conduct induces that other to transfer property and thereby received a substantial benefit, an inference of undue influence arises and a jury issue is made out. *Carroll v. Knott,* 637 S.W.2d 368, 370[1, 2] (Mo.App. 1982); *Simmons v. Inman,* 471 S.W.2d 203, 206[1, 2] (Mo.1971).

The courts entertain an expansive view of what evidence suffices to show that the fiduciary actively procured a transfer to a personal benefit. Thus, proof that a beneficiary under a will—also in a relation of confidence with the testator—procured and paid the lawyer who drew the testament suffices to raise a presumption of undue influence for jury submission. *Pasternak v. Mashak,* 392 S.W.2d 631, 637[7–10] (Mo.App. 1965). Also, active procurement will be inferred from the power of the fiduciary to influence the holder of the funds, the oppor-

tunity to do so, and that the disposition of the property was a changed course of action. *Dobbins v. Hupp,* 562 S.W.2d 736, 741[9, 10] (Mo.App.1978).

 The evidence taken most favorably to submission, sustains a proven undue influence by the son and wife to induce the transfer of the inheritance funds by the mother to a joint survivorship account. The mother was ill in an Omaha hospital when Mains first informed her of the patrimony. Mains testified that after that visit, daughter-in-law Sue asked him to turn the check over to herself and son Dennis—a request Mains refused. The day following release from the hospital, Mains delivered the check to the mother who *alone* endorsed it and returned the instrument to Mains with the purpose that Mains open an account in her *sole* name in the Iowa bank. The very next morning, Mains received a call from son Dennis that the mother had changed her mind and now wanted the check deposited in the local bank. Mains returned the check to the mother who. explained that "*Dennis decided* that she [the mother] wanted her check put in a bank at Maryville." [emphasis added] The three, mother, son and daughter-in-law then went to the Maryville bank where the inheritance check was used to purchase a $10,000 certificate of deposit payable to *either the mother or son* and the balance—except for a sum used to pay an obligation—was deposited in a *joint account* with the son and daughter-in-law. That the son and daughter-in-law were present and aided the entire investment transaction, and that the transfer into the joint names was a change from the original intent to keep the funds in a personal account, are all indicia of undue influence under the developed law as to the quantum of evidence required to show active procurement of the property by the fiduciary. *Pasternak v. Mashak,* 392 S.W.2d 631, 637[7–10] (Mo.App.1965). The most significant evidence, however, was that the transfer of the inheritance funds into a joint account was, by the admission of the son himself, that the original intention of the mother was that the funds be divided among the three sons equally—a

purpose thwarted by the change of mind to deposit the money in a solely owned account in Iowa to the joint account in the Nodaway bank. *Wilhoit v. Fite,* 341 S.W.2d 806 (Mo. 1960). The jury could have found that Dennis and Sue induced that change of mind to their own advantage. *Switzer v. Switzer,* 373 S.W.2d 930, 939 (Mo.1964). The contention of the appellants that for submission, undue influence must be shown by clear, cogent and convincing evidence is simply misplaced. The case they cite—*Wingate v. Griffin,* 610 S.W.2d 417 (Mo.App.1980)—was to cancel a deed, the exercise of an extraordinary equity power. The undue influence which will set aside a conveyance in equity must indeed, as cancellation for any other reason, be proven by clear, cogent and convincing evidence. A petition to discover assets, however, is an action at law. *Matter of Estate of Mitchell,* 610 S.W.2d 681, 684[3–5] (Mo.App.1980). The quantum of evidence to prove that a fiduciary actively worked to transfer a probate asset for a personal benefit is that which appertains to a usual action at law—substantial evidence. *Pasternak v. Mashak,* 392 S.W.2d 631, 637[7–10] (Mo.App.1965). The point is denied.

 The appellants next object to a note written to the Nodaway bank and appended to the checking account signature card record. It was identified by daughter-in-law Sue as written in the hand of the decedent mother and signed by her. The document was identified by the bank assistant vice-president who supervised the records. The note was received by the bank and—as in the case of an instruction by a depositor as to an account—was attached to the signature card. The note, received as a separate exhibit, reads:

"and please take Dennis and Sue's names off my checking as I am well and not going to die yet. I can write my own checks.

Elsie Stanley"

The stamped date *February 6, 1978,* appears beneath the signature. The rest of the

exhibit contains another note in the hand of the mother and over her signature:

> "# 61–701–5 [checking account number] Please make this account joint as of March 28, 1979.
>
> Elsie Stanley" [1]

The appellants contend that the writing did not qualify as a business record and was otherwise too incomplete a document for any other purpose of evidence and was simply inadmissible.

The exhibit was received, not as a business record, but as evidence of the intention of Elsie Stanley as to the ownership meant for the funds in that account. The script and signatures were identified as those of Elsie Stanley. That the mother wrote the words, therefore, is not disputed. The appellants are quite wrong to say that "the absence of a date leaves unanswered the question of when this purported 'intent' of the deceased was actually formed." The date *February 6, 1978,* was impressed on the paper by the bank on the date it was received. The account affected by this written instruction, to be sure, was a checking account, and not the savings account in issue. The bank records demonstrated that *both* the checking account and savings of the mother were made into joint accounts with the son and daughter-in-law on October 21, 1977. It was the testimony of the two that the intention of the mother as to *both* accounts that they should have them. That is, they denied that the purpose for the joint named checking account was to pay the hospital costs during that period of illness. It was in that spate of deposition testimony that the son acknowledged that the mother intended for all three sons to share the inheritance money. The state of mind of the mother as to the disposition of her money, therefore, was an issue.

The instruction written by the decedent to the bank was relevant therefore to prove that her true intention was that all three sons share the inheritance and that only the undue influence of the son and daughter-in-law thwarted that purpose. It was admissible, therefore, under the *state of mind* exception to the hearsay rule: that declarations which manifest a present state of mind or intent are admissible—where that condition is an issue. *State ex rel. State Highway Commission v. City of St. Louis,* 575 S.W.2d 712, 713, 722[13, 14] (Mo.App. 1978); Mo. Evidence, § 9.9, 3rd ed., The Missouri Bar (1980). The hearsay rule has no application because the extra-judicial utterance is offered, not as evidence of the truth of the facts asserted, but to show the reasons for the actions of the decedent or other actor. *State ex rel. Smith v. Hughès,* 356 Mo. 1, 200 S.W.2d 360, 361[2] (banc 1947). Thus, such a statement does not constitute substantial evidence of undue influence and the cause of action does not stand on such a proof alone. *Hammonds v. Hammonds,* 297 S.W.2d 391, 397[9–11] (Mo. 1957). There was substantial evidence of undue influence quite apart from the written statement to submit the issue. The exhibit was properly received.

The appellants complain next of verdict director instruction number 5:

> Your verdict must be for petitioners and against defendants Dennis Stanley and Sue Stanley on petitioners' claim for discovery of the distribution from the Estate of Myrtle Rohlfs, deceased, if you believe:
>
> First, defendants or either of them exerted undue influence upon Elsie Stanley; and,
>
> Second, as a direct result of such undue influence Elsie Stanley's funds were transferred into a joint certificate of

---

**1.** The significance of this latter-written instruction was not probed at the trial. The parties concerned themselves with the meaning and admissibility of the February 6, 1978, portion of the note. The March 28, 1979, instruction coincides with the date the inheritance money was redelivered from Iowa by Mains—where a sole ownership deposit for the decedent was intend-

ed—to Mrs. Stanley who, on that date, accompanied by the son and daughter-in-law accomplished the joint certificate of deposit and savings account ownerships in the Nodaway bank. That latter note indicates that the checking account was also reconstituted into a joint ownership.

deposit or joint savings account, or both, with rights of survivorship; and,

Third, as a direct result thereof, defendants Dennis Stanley and Sue Stanley received and withheld funds belonging to the Estate of Elsie Stanley, deceased.

This case was a proceeding under § 473.-340, RSMo 1978 for the discovery of the property of an estate adversely withheld or claimed by another, and which provides, among others, that:

> [I]f the party found to have adversely withheld the title or possession, or both, of said property has transferred or otherwise disposed of the same, the court shall render a money judgment for the value thereof with interest thereon from the date the property, or any interest therein, was adversely withheld. . . .

The appellants contend that the verdict director did not require the jury to find—as the statute presupposes for recovery—that any property of the Stanley estate was *adversely withheld* by defendants, or to find the *date* of that disposition, or to fix the *interest due.*

 MAI does not prescribe a model for the submission of a cause of action under § 473.340(3). The validity of a non-MAI form rests on whether the instruction [Rule 70.02(e)] submits the *cause of action* in a manner "simple, brief, impartial, free from argument, and . . . [from the requirement to find] detailed evidentiary facts." The verdict director, of course, must submit every element of the cause of action for the jury to find, but where "an essential ultimate fact element is not in issue, the applicable MAI should be modified by deletion of that element." MAI, Third Edition p. XCIV (1981); *Cline v. Carthage Crushed Limestone Company,* 504 S.W.2d 102, 111[4, 5] (Mo.1973). Instruction number 5 submits the proposition that either or both defendants *withheld* funds of the estate. There is no contention, even by the defendants, that their exercise of interest in the funds was other than *adverse* to that of the estate. That the instruction did not employ the

*adverse* terminology of the statute does not affect the validity of the submission where that element was conceded. That the instruction did not submit that the defendants *transferred or disposed* of elements of the statutory cause of action which also does not affect the validity of the submission because that evidence was conceded. It was their very testimony that they have since spent the certificate of deposit fund as well as the savings account money. The final contention also is without merit. The statute invests the court, and not the jury, with the duty to fix the interest. The court entered judgment for interest from the date of the appointment of the administrator—the date when the estate property vested in the administrator, and from when the son and daughter-in-law began to hold adversely to the estate.[2] It was competent for the court to adjudicate the interest and to fix the amount as due from October 5, 1979, the date of the appointment of the administrator.

The judgment is affirmed.

All concur.

---

2. Sections 473.263, RSMo 1978; *Bolin v. An-* *ders,* 559 S.W.2d 235, 246[14] (Mo.App.1977).