Joan G. ROBERTSON,
Plaintiff–Appellant,

v.

The ESTATE OF Merle M.
ZIMMERMAN,
Respondent.

No. 55573.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 5, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 4, 1989.

Application to Transfer Denied
Nov. 14, 1989.

**806**

Stephan M. Hereford, Mann, Poger, Wittner & Hereford, St. Louis, for plaintiff-appellant.

John M. Schmidt, Springfield, John Sullivan, Joyce York, St. Louis, for respondent.

SMITH, Presiding Judge.

Plaintiff, Joan Robertson, appeals from an order of the probate division of the circuit court of Warren County. That order held that certain assets held by plaintiff were the property of the estate of Merle Zimmerman as alleged in the estate's Counterclaim. It further held against plaintiff on her claim for reimbursement of funds expended by her on behalf of Merle Zimmerman.

Merle Zimmerman died on August 9, 1986. She was a widow and had no children and was survived only by collateral relatives. Her will, a pour-over trust and various joint holdings left her 2.7 million dollar estate to her collateral relatives and collateral relatives of her deceased husband. Mrs. Zimmerman had suffered from cancer since prior to 1983 but there is no evidence that her mental abilities were in anyway impaired prior to her death. Her physical condition did deteriorate severely in the last two or three months before her death resulting in her being non-ambulatory for some undefined period of time. None of Mrs. Zimmerman's relatives lived in close proximity to her home in Warren County.

Plaintiff and Mrs. Zimmerman became acquainted in the 1970's. Plaintiff was a real estate agent and represented decedent in several transactions. The two became close friends and decedent placed continuing confidence in plaintiff in regard to her financial affairs. Plaintiff, either alone or in the company of decedent, transacted much of decedent's banking and had access to her safe deposit box. Plaintiff stipulated that she bore a fiduciary relationship to decedent.

In November 1985, decedent opened checking account No. 105–283–6 in the Mark Twain Bank of O'Fallon. It was originally in her name only. On January 24, 1986 the account was changed to one in the joint names of decedent and plaintiff with right of survivorship. The change was made by plaintiff at a time when decedent was in the hospital. The signature

card effecting the change was signed by decedent as well as plaintiff. No evidence was adduced that the change was other than with decedent's consent and at her direction. On March 29, 1986, decedent prepared and signed a letter which read:

"To whom it may concern:

I, Merle Zimmerman, authorize Joan Robertson, to handle the accounts in my name at the Mark Twain Banks. She has my full power to renew Certificates or administrate the holding in my name, and upon my death I leave her full ownership of our account # 105–283–6, for all her faithfulness she has showed me.

/s/ Merle M. Zimmerman

March 29, 1986."

The only evidence of the circumstances surrounding the execution of this writing was the testimony of plaintiff that when she entered decedent's home decedent was typing the document and then signed and handed it to plaintiff. Plaintiff delivered a copy of the document to the bank and the bank maintained that copy in its records. There was no evidence that the letter was coerced or represented other than decedent's intent and directions. Most of the time a balance of approximately $50,000 was in the joint account. On decedent's death the balance was $61,958.47.

There was extensive testimony that decedent went over her bills and her receipts with plaintiff and directed plaintiff as to the payment of bills and the deposit of receipts. This was done at times in the presence of decedent's relatives who were well aware of plaintiff's extensive assistance to decedent and that decedent placed heavy reliance on that assistance.

In June 1986 two additional joint accounts with decedent and plaintiff as the joint tenants were opened. One numbered 3500425 was a certificate of deposit for $60,000. It was created by an unsigned deposit into account 105–283–6 and then by a debit memo from that account. The evidence is sufficient to support the conclusion that this transaction could have been accomplished by plaintiff without the knowledge or consent of decedent. The other joint account numbered 8704306 was for $100,000 and is referred to as the "prime account." That was accomplished by a check signed by decedent. Two days later another check for $100,000 was issued and signed by decedent to purchase a certificate of deposit for the trust. The check for the prime account was prepared by plaintiff and signed by decedent. The stub for that check was filled in by plaintiff, but at some point decedent wrote "void" across the stub. Plaintiff alone handled the transactions at the bank resulting in the creation of these accounts.

In July and August a series of deposits apparently totalling $17,523.25 were made into the original joint account, number 105–283–6. These deposits were from rent, interest and other income of decedent. Plaintiff utilized that account to pay for various expenses of decedent including nursing home care and home nursing after decedent returned to her home. Plaintiff advised the family that she had access to funds of decedent to meet those expenses. The same account was also utilized by plaintiff to pay certain expenses of decedent after her death, including the funeral expenses.

In June, 1986, plaintiff removed from decedent's safe deposit box some municipal bonds. She testified that decedent requested her to do so and that several days later decedent gave the bonds back to her. Plaintiff testified that when given back to her the bonds were in a series of manila envelopes and each envelope contained a piece of paper on which was written the name of a relative. One envelope contained a piece of paper with plaintiff's name thereon. The bonds in that envelope had a face value of $22,000. In returning the bonds to plaintiff, decedent instructed her to put them in safekeeping. Plaintiff put them in a safe in her home. After decedent's death plaintiff distributed the bonds pursuant to the names in the envelopes and retained the bonds in the envelope with her name. Neither the name slips nor the envelopes were produced at trial.

Two other items of evidence should be mentioned. There was considerable testi-

mony that during her life decedent made substantial gifts to her relatives on a recurring but erratic basis. There was also evidence that the page of decedent's ledger book reflecting cash receipts from June 26 through August 6, 1986 had been removed. Plaintiff, who had access to the book and made many of the entries denied removing the page and testified that decedent utilized the page to make the slips of paper on which names were written and placed in the bond envelopes.

Plaintiff brought this action to recover from the estate the amounts she expended from the joint account for decedent before and after her death. The estate counterclaimed seeking the bonds which plaintiff retained and the proceeds from the three joint accounts. The court held for the estate on plaintiff's claim and for the estate on its counterclaim. It did reduce the amount to be recovered from plaintiff on account number 105–283–6 by the amounts expended by plaintiff for decedent. Plaintiff appeals.

We deal first with the bonds. Plaintiff asserts that the court erred in finding that decedent had no present intent to make a gift because that theory was not pleaded by the estate nor tried by consent. Strict rules of pleading are not ordinarily required in a probate proceeding. *Barrett v. Flynn*, 728 S.W.2d 288 (Mo.App.1987) [2, 3]. The pleadings must give reasonable notice of the nature and extent of the claim. *Id.* The counterclaim of the estate alleged that plaintiff took possession of the bonds after Merle Zimmerman's death and was withholding them and adversely claiming an interest in them. Those allegations were sufficient to advise plaintiff that the estate was claiming the bonds as assets of the estate. The issue presented was whether plaintiff was holding assets belonging to the estate. How or when the bonds came into the possession of plaintiff was not a necessary element of the estate's claim.

It was admitted that the bonds belonged to decedent at the time she gave plaintiff possession of them. A person claiming an inter vivos gift or a gift causa

mortis has the burden of establishing the gift by clear and convincing evidence. *Schultz v. Schultz*, 637 S.W.2d 1 (Mo. banc 1982) [5, 6]. Where the gift is not asserted until after the alleged donor's death, it is viewed with suspicion and it has been held the proof should leave no room for reasonable doubt. *In re Peterson's Estate*, 295 S.W.2d 144 (Mo.1956) [8–10].

The essential elements of an inter vivos gift of personal property are (1) a present intention to make a gift on the part of the donor, (2) a delivery of the property by the donor to the donee, and (3) an acceptance by the donee whose ownership takes effect immediately and absolutely. *In re Estate of Winterman*, 492 S.W.2d 763 (Mo.1973) [1–3]. For a valid gift causa mortis, which is conditioned upon death, the delivery must be such as would invest the donee with title in the case of a gift inter vivos. *Genteman v. Sutter*, 215 S.W.2d 477 (Mo.1948) [1–5].

The only evidence surrounding the bond transaction was the oral testimony of plaintiff which the trial court was free to disbelieve. Plaintiff had full access to the decedent's safe deposit box and could have acquired the bonds without decedent's knowledge. Further, even plaintiff's testimony did not establish a valid gift. Decedent did not express an intention to make a gift, she merely requested that plaintiff put the bonds in "safekeeping." "Safekeeping" does not by itself indicate a gift. *See, Pollock v. Brown*, 569 S.W.2d 724 (Mo. banc 1978) [8]. Plaintiff points to the names allegedly written on the slips as evidencing decedent's intention to make a gift. The slips were not presented as evidence. Even written language expressing an intent to give does not constitute a gift in the absence of a complete and unconditional delivery. *In re Estate of Piper*, 676 S.W.2d 897 (Mo.App.1984) [4–7]. We find no error in the trial court's finding that the bonds were an asset of the estate.

Plaintiff also challenges the trial court's finding that all three joint accounts were opened as the result of undue influence and that all three therefore constituted assets

of the estate. While the parties have not addressed each account separately, we find it necessary to do so. As to account 105–283–6 we are unable to find evidence that it was placed in joint names as a result of undue influence. As to Accounts 3500425 and 8704306 and the July deposits into account 105–283–6, we find the evidence to support a finding of undue influence.

■ *In re Estate of LaGarce,* 487 S.W.2d 493 (Mo. banc 1972) [2–4], held that the statutes of Missouri allow the creation of statutory joint tenancies in bank accounts and that in the absence of fraud, undue influence, mental incapacity or mistake the survivor will become the owner of the account. Here the attack on the accounts was undue influence which the trial court found. A presumption of undue influence arises in joint account cases where there is a showing of (1) a confidential and fiduciary relationship and (2) some additional evidence from which undue influence may be inferred. *Estate of Brown v. Fulp,* 718 S.W.2d 588 (Mo.App.1986) [5–8]; *Estate of Hayes,* 658 S.W.2d 956 (Mo.App. 1983) [4, 5]. Plaintiff contends that there was no direct evidence to establish undue influence and that circumstantial evidence is insufficient to support a case of undue influence. In *Salisbury v. Gardner,* 515 S.W.2d 881 (Mo.App.1974) [4], the court recognized that persons exerting undue influence will do so in as subtle, furtive, indirect and elusive a manner as possible and that such influence may therefore be shown "indirectly by the reasonable and natural inferences drawn from the facts and circumstances proved, or in short, by circumstantial evidence."

■ There is no rigid formula of what must be proven to establish undue influence. Plaintiff has admitted she stood in a fiduciary relationship with decedent. The court found additionally that plaintiff was in a position to exercise undue influence over decedent. The specifics of that finding were essentially the facts necessary to find the existence of a fiduciary relationship and it would appear almost by definition that the existence of a fiduciary relationship establishes a position to exercise undue influence. We are unable to conclude that that is really a separate criterion.

■ The court found further that the titling of the accounts into joint names was a departure from decedent's testamentary plan, an indication of undue influence. *Smith v. Chatfield,* 745 S.W.2d 199 (Mo. App.1987) [2]. As to the last two accounts that was certainly true. Given the rapidly deteriorating state of decedent's health at the time of opening those accounts, and the balance available for decedent's care in the original account, those accounts could have little purpose other than as testamentary devises. Decedent's long established testamentary plan was to provide for her and her husband's relatives through her will, trust and by substantial gifts during decedent's life. There is nothing to indicate that plaintiff was a part of that testamentary plan. Her sudden inclusion during decedent's final weeks of life into that plan evidences a departure from the plan justifying an inference that her inclusion was the result of plaintiff's influence over the decedent. The trial court also found that the percentage of the estate to be received by plaintiff when compared to that of the other beneficiaries was significant. While the percentage itself was only 8% it exceeded that received by most of decedent's relatives. We agree with the trial court that the amount to be received by plaintiff is some indication of undue influence.

■ We are unable to draw the same conclusion about account number 105–283–6. The account was originally established in decedent's name alone and then in January 1986, transferred to joint names. This was apparently done without decedent being present but no evidence was presented that the signature was obtained through plaintiff's pressure. Decedent had suffered with cancer for a number of years and could reasonably anticipate an increasing deterioration in her health and an increasing need for someone to look after her well-being and pay her bills. No relatives were located in close proximity to her who could assume those burdens. Plaintiff was. And decedent and her relatives had

confidence in her ability to provide those services. The amount in the account in January was substantial but minimal in relation to decedent's assets. It represented a generous but rational estimate of the potential of expenses which might be expected during a possibly substantial period of invalidism, nursing home confinement, and private nursing services. Two months after the opening of the account in joint names decedent expressed in writing her knowledge of the account and her intention that what was left of it upon her death would go to plaintiff "for all her faithfulness she has showed me." No evidence was adduced that this document was other than the free will expression of decedent of her intentions as regards this account. Plaintiff utilized that account to pay the expenses of decedent's final weeks and for her after death expenses. There was evidence that decedent asked various relatives whether $5,000 was enough to leave plaintiff for all her efforts. This reflects decedent's intent to provide plaintiff something for her services but no other provision was made for plaintiff by decedent. The March letter indicates this account was for that purpose. We are unable to conclude that the evidence establishes that this account at the time it was placed in joint names was the product of undue influence.

The two subsequent accounts do not bear this indicia of free will. There was evidence to support the conclusion that in the final months plaintiff attempted to insulate decedent from her relatives and to exercise a greater level of control over decedent's mail and her financial dealings. Her control over the mail could well have allowed her to keep knowledge of these two accounts from decedent. The $60,000 joint account was the result of a debit transaction within the bank authorized by plaintiff without any indication of participation by decedent. The signature card signed by decedent was in such form that the joint nature of the account may not have appeared when the card was signed. Unlike account 105–283–6 there is no evidence that decedent ever acknowledged the existence of the account or its joint nature. The $100,000 joint account carries a like suspi-

cion. Two different checks for that amount were issued within two days of each other signed by decedent and one was apparently intended to be placed into the trust. Decedent marked on her check stub that the first check had been voided. It is a reasonable inference that decedent was led to believe by plaintiff that only the check for the trust had in fact been presented for payment, that the other check had been voided for some reason and the second check was to replace it.

The March letter gave plaintiff authority to handle accounts in decedent's name and to renew certificates or administrate the holdings in "my" name. It gave no authority to transfer holdings into joint names as plaintiff did. The removal of the ledger page, which by inference could be attributed to plaintiff, bespeaks an effort to conceal from decedent and her relatives the receipts of decedent and the disposition of those receipts by plaintiff. It leads to a reasonable conclusion that during the final months some of those receipts were channeled into joint account 105–283–6 for plaintiff's ultimate benefit rather than into other accounts which would pass by will.

It is evident from this record that plaintiff exercised great influence over decedent in her business and personal affairs and was greatly trusted by decedent. It is reasonable to conclude from the record in the last two months of decedent's life plaintiff abused that trust. Whether that breach is delineated as fraud, breach of trust, or undue influence we do not find important. The concepts, although not identical, are closely related. *Gockel v. Gockel*, 66 S.W.2d 867 (Mo.1933) l.c. 870; *Gordon v. Burris*, 153 Mo. 223, 54 S.W. 546 (1899) l.c. 551–552. The trial court found that the transactions involving the joint accounts from June on were not the acts of the decedent. That finding is fully supported by the record.

Paragraphs numbered 2, 3, 4 and 5 of the judgment of the trial court are affirmed. Paragraph numbered 1 of the judgment is reversed and remanded with directions to award the estate so much of account 105–283–6 as represents deposits made to that

account by plaintiff in July and August 1986 from income of decedent plus interest on that amount from the date of decedent's death.

STEPHAN and SATZ, JJ., concur.