In the ESTATE OF Cornelius Henry GROSS, Deceased, Dorothea Lee Stohl, Mary June McGinnitey and Doris Herberholz, Administrator Ad Litem, Plaintiffs–Respondents,

v.

James Edward GROSS, Defendant–Appellant.

Nos. 60549, 60606.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 22, 1992.

Rehearing Denied Oct. 29, 1992.

2. Until 1980, forcible rape was classified as a class B felony.

Doskocil & Doskocil, P.C., John L. Doskocil, Christopher J. Doskocil, Sunset Hills, for defendant-appellant.

Kim Roger Luther, Katherine L. Butler, St. Louis, Gallop, Johnson & Neuman, Edwin Akers, Sterling Miller, Clayton, for plaintiffs-respondents.

PUDLOWSKI, Presiding Judge.

James Gross, (hereafter defendant) appeals from a judgment that he adversely held assets belonging to the estate of his father, Cornelius Henry Gross, and from a court order imposing a constructive trust upon said assets.

Defendant raises six points on appeal. (1) The trial court erred in denying his motions for directed verdict, for judgment notwithstanding the verdict, and for new trial based on the insufficiency of the evidence. (2) The trial court erred in overruling his motion in limine and in admitting evidence of defendant's actions taken subsequent to his father's death. (3) The trial court erred in submitting plaintiff's non-MAI instruction 5 defining "undue influence." (4) The trial court erred in submitting plaintiffs' instruction 6, a verdict director. (5) The trial court erred in refusing to give defendant's tendered converse verdict director. (6) And the trial court erred in entering judgment on count II and setting up a constructive trust. We will address the issues as they were raised in defendant's briefs.

This is a discovery of assets proceeding pursuant to § 473.340 RSMo (1986) for the estate of Cornelius Henry Gross (hereafter Cornelius), deceased father of both plaintiffs and defendant. Two sisters, Mary June McGinnitey and Dorothea Stohl (hereafter plaintiffs), brought suit against their brother, (defendant), alleging in count I that he exerted undue influence, fraud and deceit upon Cornelius to induce him to title his assets and safety deposit box in joint tenancy with defendant. In count II, plaintiffs asked the court to establish a constructive trust on these assets, with distribution pursuant to Cornelius' last Will and Testament.

In establishing the facts from an unfavorable jury verdict, we accept plaintiffs' evidence as true and disregard defendant's evidence except as it supports plaintiffs' case, and we afford plaintiffs all favorable inferences which reasonably may be drawn. *Hodges v. Hodges*, 692 S.W.2d 361, 376 (Mo.App.1985).

On July 21, 1990, Cornelius died leaving a wife and six surviving children. At his death, Cornelius possessed assets exceeding $360,000.00, the majority was listed in joint-tenancy with defendant. Cornelius' last Will and Testament, executed on March 31, 1985, made specific bequests to his three estranged children of $100, $100, and $5000, while explicitly providing that the remainder of his estate be divided equally between his three favorite children: (here, the two plaintiffs and defendant). Cornelius' wife, (hereafter Geraldine), waived all claims to her husband's estate in an antenuptial agreement.

The controversy surrounding this cause arose out of Cornelius' actions, beginning in 1985 and lasting until his death, in placing the bulk of his assets in joint-tenancy with defendant. At Cornelius' death these jointly held assets, valued at $357,861.62, were controlled and possessed by defendant, thus reducing Cornelius' estate to $5,700.00.

After a two day trial, the jury returned a verdict for plaintiffs, finding defendant guilty of exerting undue influence upon Cornelius, and valuing the adversely held assets from the estate of Cornelius Henry Gross at $357,861.62. In addition to the judgment on discovery of assets, the trial

court also imposed a constructive trust upon the disputed assets.

At trial, plaintiffs presented evidence revealing defendant's scheme to gain exclusive control of Cornelius' assets. The plan centered around defendant's use of his confidential relationship with Cornelius to unduly influence Cornelius into titling his assets and safe deposit box in joint-tenancy with defendant. In doing so, defendant knowingly made false representations to Cornelius. For example, defendant convinced Cornelius that it was in Cornelius' best interest to title his assets in joint-tenancy with defendant. He caused Cornelius to believe that the joint-tenancies would allow the estate to avoid probate taxes and leave more money for the three children to divide. From the beginning, however, defendant planned to keep the money for himself. Defendant preyed on Cornelius' fears about what would happen to his estate, if he should become incapacitated and eventually die. Therefore, at defendant's urging, Cornelius agreed to place defendant as joint-tenant on certain of his assets, but only so defendant could hold his property in trust for the benefit of the heirs named in Cornelius' Will. Cornelius trusted defendant to honor this agreement.

## Point I: SUBMISSIBILITY

In his first point on appeal, defendant claims that the trial court erred in denying his motion for directed verdict, his motion for judgment notwithstanding the verdict, and his motion for new trial based on the insufficiency of the evidence to prove a fiduciary relationship or undue influence. We disagree, and hold plaintiffs' evidence sufficient to submit the case to the jury.

■ Before reaching the merits of defendant's challenge to the evidence, we note that defendant waived the issue at trial. A motion for judgment notwithstanding the verdict is properly preserved only when a motion for directed verdict at the close of all the evidence has been made. *Brandhorst v. Carondelet*, 625 S.W.2d 696, 698 (Mo.App.1981). If defendant presents no evidence, then the required motion for directed verdict is made at the close of plaintiff's evidence; however, if the defendant does present evidence, then the required motion must be made at the close of all the evidence. Failure to file such a motion at the close of all the evidence waives a contention that plaintiff failed to make a submissible case. *Schnatzmeyer v. Nat'l Life Ins.*, 791 S.W.2d 815, 819 (Mo.App.1990) (citation omitted). In the case *sub judice*, defendant moved for directed verdict at the close of plaintiffs case, but failed to make the same motion at the close of all the evidence. Instead, at the close of all the evidence defendant resubmitted his motion to dismiss, and he now asks this court to treat his "motion to dismiss" as a "motion for directed verdict." The record, however, does not show that the trial court clearly understood and treated defendant's motion as a motion for directed verdict. *See Frisella v. Reserve Life Ins. Co. of Dallas*, 583 S.W.2d 728, 731–732 (Mo.App.1979). Accordingly, we cannot properly construct a motion for directed verdict out of defendant's motion to dismiss. Defendant's post-verdict motion for judgment notwithstanding the verdict is without basis and preserves nothing for appellate review. *Brandhorst*, 625 S.W.2d at 698.

Defendant's waiver notwithstanding, this court may review plain errors affecting substantive rights under Rule 84.13(c). *Farnsworth v. Farnsworth*, 728 S.W.2d 223, 225–226 (Mo.App.1986); Rule 84.13 [1992]. On plain error review, defendant must show that the "verdict represents manifest injustice or a miscarriage of justice...." *Farnsworth*, 728 S.W.2d at 228. Even on a more scrutinizing review, it would not be the function of this court to determine the existence of undue influence. Our review is limited to a determination of whether or not the evidence, viewed favorably to the contestants, establishes facts from which the jury could have reasonably inferred undue influence. *Matthews v. Turner*, 581 S.W.2d 466, 472 (Mo.App.1979) (quoting *Simmons v. Inman*, 471 S.W.2d 203 (Mo. banc 1971)).

"A motion for a directed verdict is appropriate only where ... reasonable minds

could find only in favor of the moving party." *Duvall v. Brenizer*, 818 S.W.2d 332, 335 (Mo.App.1991). A case for discovery of assets, however, should not be submitted to the jury unless " 'each and every fact essential to liability is predicated on legal and *substantial* evidence.' " *Id.* (quoting *Owens v. Union Elec. Co.*, 729 S.W.2d 248, 250 (Mo.App.1987)) (emphasis added). Although, "[u]ndue influence which will set aside a conveyance in equity must ... be proven by clear, cogent and convincing evidence.... [a] petition to discover assets ... is an action at law ... and the quantum of evidence ... is that which appertains to a usual action at law—substantial evidence." *Estate of Stanley*, 655 S.W.2d 88, 91 (Mo.App.1983) (quoting *Pasternak v. Mashak*, 392 S.W.2d 631, 637[7–10] (Mo.App.1965)).

The exercise of undue influence most often requires a case-by-case analysis and is usually proven by circumstantial evidence. *See Godsy v. Godsy*, 504 S.W.2d 209, 213 (Mo.App.1973); *Matthews*, 581 S.W.2d at 471 (quoting *Davis v. Pitti*, 472 S.W.2d 382 (Mo.1971)). "[P]ersons exerting undue influence will do so in as subtle, furtive, indirect and elusive a manner as possible and ... such influence may therefore be shown 'indirectly by the reasonable and natural inferences drawn from the facts and circumstances proved....' " *Robertson v. Estate of Zimmerman*, 778 S.W.2d 805, 809 (Mo.App.1989) (quoting *Salisbury v. Gardner*, 515 S.W.2d 881 (Mo. App.1974)). "[I]t is impossible to set forth a rigid formula of what facts must be established to make a submissible case of undue influence by circumstantial evidence. Factual situations are subject to such a myriad of variations that any one case is of limited precedential value." *Matthews*, 581 S.W.2d at 472.

Disputing plaintiffs' allegations of undue influence, defendant claims the joint tenancies have been created in accordance with Missouri statute § 369.174 RSMo (1986). The statute allows the creation of joint-tenancies in the absence of fraud, undue influence, mental incapacity or mistake. *Estate of Zimmerman*, 778 S.W.2d at 809. Barring these exceptions, the survivor of a joint account will become the sole owner. *Id.* In the context of this case, "undue influence consists of 'overpersuasion or coercion which substitutes the will of one person for the free will of the other.' " *In re Estate of Newsum*, 798 S.W.2d 165, 171 (Mo.App.1990) (quoting *Steller v. Steller*, 401 S.W.2d 473, 477 (Mo.1966)).

A presumption of undue influence arises in discovery of assets cases where substantial evidence shows (1) a confidential and fiduciary relationship; (2) benefaction to the fiduciary; and (3) some additional evidence from which undue influence may be inferred. *Estate of Zimmerman*, 778 S.W.2d at 809 (quoting *Estate of Brown v. Fulp*, 718 S.W.2d 588 (Mo.App. 1986)); *See also Duvall*, 818 S.W.2d at 335. Otherwise stated, "[w]here ... a party in a relation of trust to another, by active conduct induces that other to transfer property and thereby received [sic] a substantial benefit, an inference of undue influence arises and a jury issue is made out...." *Estate of Stanley*, 655 S.W.2d at 90; *accord In re Estate of Newsum*, 798 S.W.2d at 171. "When supported by substantial evidence, the presumption makes a prima facie case which does not disappear upon the introduction of rebutting testimony but presents an issue for the jury." *E.g.*, *Hodges*, 692 S.W.2d at 367 (quoting *Loehr v. Starke*, 332 Mo. 131, 56 S.W.2d 772, 776[3] (Mo. banc 1932)) (citation omitted). As the following discussion will confirm, plaintiffs submitted sufficient evidence to raise the presumption of undue influence.

To satisfy the first prong of the presumption, we find substantial evidence for the jury to have decided whether defendant maintained a fiduciary and confidential relationship with Cornelius. Although difficult to define, "[a] confidential relationship exists when one thus relies upon and trusts another in regard to handling property and business affairs, thereby creating some fiduciary obligation." *Godsy*, 504 S.W.2d at 212. "The terms 'confidential' and 'fiduciary' are in general application, synonymous. [citation omitted]. A confidential relationship exists between two persons, whether their relations be such as are technically

fiduciary or merely informal, whenever one trusts in and relies on the other...." *Hodges*, 692 S.W.2d at 377 (quoting *Wilhoit v. Fite*, 341 S.W.2d 806, 813 (Mo. banc 1960)). As in *Hodges*, the evidence of defendant's confidential relationship with Cornelius may not be "overwhelming, and ... [though] the jury could have easily found that no such relationship existed, we are nonetheless persuaded that there was enough evidence, viewed most favorably to contestants, to support an affirmative finding on that issue." *Hodges*, 692 S.W.2d at 377. At trial, witnesses testified that Cornelius trusted and relied on defendant to make financial decisions. For example, Cornelius asked defendant to arrange the purchase of a new car. Moreover, defendant instructed Cornelius on what kind of tractor to buy and how to manage the purchase. Defendant made other financial decisions for Cornelius, which included deciding to whom Cornelius should sell his house. Geraldine testified that Cornelius discussed everything with defendant before Cornelius did things, and that Cornelius conducted business affairs with defendant's assistance. Two witnesses testified that defendant would seclude Cornelius to talk about financial affairs, and one witness stated that defendant had a special closeness with Cornelius which allowed him to get Cornelius to do whatever defendant wanted him to do. In addition, the evidence showed that Cornelius' intent in creating joint-tenancies was to allow for defendant to manage his estate and take care of him if he should become incapacitated or die. And as previously mentioned, Cornelius trusted the defendant so much that he put almost all of his assets in defendant's name jointly at defendant's suggestion. We believe the evidence was sufficient for the jury to find defendant in a confidential and fiduciary relationship with Cornelius.

Defendant does not challenge the proof of the presumption's second prong: benefaction to the fiduciary. As a result of the joint-tenements, defendant received $357,-861.62, whereas had the transfers not been made, defendant would have received only one-third this amount. Sufficient evidence has been proffered to prove substantial benefit to the fiduciary.

We also hold that plaintiffs produced substantial evidence to satisfy the third prong of the presumption. Additional evidence or "active procurement will be inferred from the power of the fiduciary to influence the holder of the funds, the opportunity to do so and that the disposition of the property was a changed course of action...." *E.g.*, *Estate of Stanley*, 655 S.W.2d at 90–91 (quoting *Dobbins v. Hupp*, 562 S.W.2d 736, 742[9, 10] (Mo.App.1978)). "[I]t would appear almost by definition that the existence of a fiduciary relationship establishes a position to exercise undue influence." *Estate of Zimmerman*, 778 S.W.2d at 809. Additionally, "[c]ourts have adopted a liberal attitude regarding the quantum of evidence necessary to establish that the fiduciary was activity concerned in some way which caused or contributed to cause the execution of the instrument." *Godsy*, 504 S.W.2d at 213 (quoting *Pasternak v. Mashak*, 392 S.W.2d 631, 637 (Mo. App.1965)); *See also Steller v. Steller*, 401 S.W.2d 473, 477–478 (Mo. banc 1966). The actual presence of the beneficiary at the transaction, or even the exertion of his influence at the exact moment of transaction need not be shown. *Godsy*, 504 S.W.2d at 213. In *Estate of Zimmerman*, 778 S.W.2d at 809, the court found "the titling of the accounts into joint names ... a departure from decedent's testamentary plan, an indication of undue influence." In the present case, the joint-tenancies also mark a drastic departure from decedent's testamentary plan to divide his assets equally among his three favorite children. Moreover, as a confidant and fiduciary, defendant had the power and opportunity to influence Cornelius. There was additional evidence of defendant's undue influence by a witness who testified to a 1985 conversation with defendant. In this 1985 conversation, defendant talked about Cornelius' money; said he would be a rich man someday; and stated that he could and would put Cornelius' assets in his name. The jury could also have found evidence of undue influence in Cornelius' statement to one of the plaintiffs that defendant was

"checking into" putting Cornelius' assets in defendant's name. Cornelius purportedly said that defendant was urging and pushing him to jointly title assets, in order to save taxes, so there would be more money for all the children. Finally, more than one witness testified that defendant would seclude Cornelius from others and talk to him about financial affairs. The quantum of evidence produced at trial satisfies the required showing of additional evidence under prong three of the presumption.

Even without the three-pronged presumption, the plaintiffs constructed a submissible case. "[T]he existence of a presumption is not essential to a submissible case if the circumstantial evidence is otherwise sufficient to permit a reasonable inference of undue influence." *Matthews*, 581 S.W.2d at 472. As in *Hodges*, plaintiffs presented evidence of undue influence apart from the presumption. The court in *Hodges* concluded that the jury could have inferred the exercise of undue influence from testimony that defendant commented *she had taken care of getting everything [the assets] in her name. Hodges*, 692 S.W.2d at 378 (emphasis added). We find defendant's statement that he could and would put his father's assets in his name, along with his statement that he would be a wealthy man someday, equally as damaging as the testimony in *Hodges*. Defendant made these statements a few months before the creation of the first joint-tenancy at issue. In light of the subsequent evidence showing Cornelius' intent to have all his assets, including those jointly held with defendant, divided according to his last Will and Testament, defendant's aforementioned utterances constitute sufficient evidence apart from the presumption for the jury to infer the exercise of undue influence.

Ample evidence was presented to indicate that Cornelius intended for plaintiffs to share his assets equally with defendant. The attorney who drafted Cornelius' last Will and Testament claimed that he wrote the Will in accordance with Cornelius' wishes. In dispute of defendant's assertion, the attorney said Cornelius never indicated to him any desire to disinherit plain-

tiffs, and we find that the Will does not reflect any such intention. Cornelius' wife, Geraldine, also testified that the 1985 Will accurately represented Cornelius' intentions. Cornelius "was very up front," she said. "If he hadn't wanted them [plaintiffs] to have anything, he would have said so.... He said exactly how he wanted it...." Her characterization of what Cornelius would have done if he had wanted plaintiffs disinherited was corroborated by the Will, itself. Cornelius' Will plainly disinherits two other children by explicitly providing for them to receive only $100 each. Additional evidence of Cornelius' intent includes his telling plaintiffs that they would each inherit money after his death. In fact, one week before his death Cornelius told one plaintiff, who injured herself and could no longer work, not to worry about working because he was leaving her money. Likewise, defendant's own actions assisted in proving Cornelius' intention for the joint-tenancies. In his activities as personal administrator of the estate, defendant partially treated the joint-tenancies as belonging to Cornelius' estate. He paid beneficiaries of the Will, not from the money left in the estate, but from the joint-tenancies. He also reimbursed the funeral costs, not from the $5,700 remaining in the estate, but from the joint assets. In sum, substantial evidence existed to show that the father intended and that all parties, including defendant, understood that the assets titled in joint-tenancy with defendant were to be divided equally among the three favorite children. Accordingly, we do not find any error under Rule 84.13(c) and therefore we affirm the trial court's denial of defendant's motion. Point I denied.

POINT II: MOTION IN LIMINE

■ In his second point, defendant contends the trial court erred in overruling his motion in limine and in admitting evidence of actions taken by defendant subsequent to Cornelius' death.

In his motion in limine, defendant objected to the introduction of the following evidence as being irrelevant and prejudicial: (1) that the defendant did not attend his father's funeral; (2) that on the morning of

the funeral defendant went to the bank and transferred money from the joint accounts into his own name; (3) that defendant cashed one of the jointly-titled bonds in order to purchase a new house; and (4) that defendant used the jointly-titled assets to pay the beneficiaries of Cornelius' Will. The pre-trial motion in limine to exclude the evidence was denied by the trial court, and defendant objected to the same evidence at the first instance of its introduction at trial.

■ Plaintiffs' contend that defendant did not properly object at trial, and therefore did not preserve his objection to the evidence. They argue that a "motion in limine is interlocutory in nature, and [that to preserve it,] it is necessary to lodge a specific objection during trial to the introduction of evidence comprising the basis of the motion." *Sooter v. Magic Lantern, Inc.*, 771 S.W.2d 359, 362 (Mo.App.1989) (quoting *Jones v. Jones*, 661 S.W.2d 817, 818 (Mo.App.1983)). While we agree with plaintiffs citation of *Sooter*, we find defendant's re-submission of his motion in limine at trial sufficient to preserve his objection.

> All that is required of any objection to evidence is that the objection be sufficiently clear and definite [so] that the trial court will understand the reason for the objection.... A party is not required to continue to object when the trial court's position on relevancy has been clearly established by overruling ... earlier objections....

*Williams v. Bailey*, 759 S.W.2d 394, 397 (Mo.App.1988). Having heard argument on the initial motion in limine, the trial court clearly understood the basis of the re-submitted objection at trial. Accordingly, defendant preserved his objection.

In reviewing the admissibility of evidence, the trial court's determination of relevancy will be upheld unless a clear abuse of discretion is shown. *See McMullin v. Borgers*, 806 S.W.2d 724, 732 (Mo. App.1991). We hold that the trial court did not abuse its discretion in admitting evidence of defendant's acts subsequent to Cornelius' death.

Within its discretion, the trial court found the evidence relevant to show the completion of defendant's scheme to disinherit plaintiffs by unduly influencing Cornelius. Defendant's appellate brief misconstrues *Switzer*, 373 S.W.2d 930 (Mo.1964), as standing for the proposition that post-event evidence is *per se* inadmissible to indicate undue influence. *Switzer* did not as defendant asserts establish a bright-line rule, but rather it made a specific finding that the post-event evidence before the court was irrelevant to the plaintiff's case. Similarly, the trial court in the present case made a specific finding on the post-event evidence, but within its discretion determined the evidence to be relevant.

■ In affirming the trial court's denial of defendant's objection, we remind the defendant that this is a discovery of assets proceeding. In a discovery of assets case, the court must determine the nature, value and extent of the property adversely held by defendant, as well as the persons who have an interest in the property. § 473.340 RSMo (1986). In identifying the property adversely held, the court may determine defendant's handling and transferring of the property to be relevant, whether or not such activity occurred before, during or after the alleged undue influence.

Accordingly, we find no abuse of discretion in the trial court's admission of evidence taken by defendant subsequent to Cornelius' death. Point II denied.

POINT III: UNDUE INFLUENCE INSTRUCTION

■ In point III, defendant contends the trial court erred in submitting plaintiff's instruction 5, which defined "undue influence" because it improperly stated the law by setting out a lower standard of influence than required. Defendant also argues that there existed an applicable MAI, which the trial court was required to give.

Instruction 5 defined the "undue influence" that applies in a discovery of assets case. It stated as follows: "The phrase 'undue influence' as used in these instructions means over persuasion or coercion which substitutes the will of one person for the free will of another." This definition was used in *Steller*, 401 S.W.2d at 477, and

we cited the definition in a recent case for discovery of assets, *In re Estate of Newsum*, 798 S.W.2d at 171.

Despite recent court approval of the definition in instruction 5, defendant insists that the trial court was obliged to apply his modified MAI 15.03 instruction. MAI 15.03 is a *will contest* instruction, which defines the "undue influence" applicable in a will contest proceeding. It reads as follows: "The phrase 'undue influence' as used in these instructions means such influence as destroys the free choice of the person making the [will] [codicil]." MAI 15.03 [1991]. Using MAI 15.03, defendant submitted the following modified instruction: "The phrase 'undue influence' as used in these instructions means such influence as destroys the free choice of the person in how he titles his assets."

We hold that the trial court was not required to use defendant's modified MAI 15.03 instruction. MAI 15.03 is a will contest instruction, and does not mandatorily apply to a case for discovery of assets. Missouri distinguishes between a case for discovery of assets, and a will contest case. *See McMullin*, 806 S.W.2d at 728. In its distinction, Missouri law demands a lesser burden of proof for "undue influence" in a discovery of assets action, than it does for an action to set aside a conveyance in equity. *Id.* Instruction 5 followed substantive law as delineated by this court. *See In re Estate of Newsum*, 798 S.W.2d at 171 (quoting *Steller*, 401 S.W.2d at 477). Instruction 5 did not misdirect, mislead, or confuse the jury. Therefore, defendant's challenge to instruction 5 is without merit. Point III denied.

## Point IV: VERDICT DIRECTOR

■■■ On his fourth point, defendant contends the trial court erred in submitting plaintiffs' instruction 6, a verdict director, because the instruction did not contain all required elements of plaintiffs' claim.

Defendant contends the verdict director should have required the finding of a fiduciary/confidential relationship. We agree with defendant that a verdict director must submit every element of the cause of action. *Estate of Stanley*, 655 S.W.2d at 93.

A fiduciary/confidential relationship is a necessary element of undue influence. In offering the instruction to the court, the plaintiffs relied on the instruction approved in *Estate of Stanley* at p. 92. However, in *Stanley*, the defendants conceded that there existed a confidential relationship between them and the mother. The Western District recognized this admission and said, "the verdict director, of course, must submit every element of the cause of action for the jury to find, but where 'an essential ultimate fact element is not in issue, the applicable MAI should be modified by deletion of that element.'" *Id.* at 93. Therefore, the submitted instruction did not include the required finding of a confidential/fiduciary relationship. However, in the case *sub judice* the defendant denied in his answer and at trial that a confidential/fiduciary relationship existed. Such a denial required a finding by the jury that a confidential/fiduciary relationship did or did not exist. We therefore conclude the trial court erred.

Point IV granted.

## POINT V: AFFIRMATIVE CONVERSE INSTRUCTION

■■■ Defendant claims that the trial court erred in refusing to give his tendered converse verdict director in that it was a proper affirmative converse, and that the refusal left the jury with no verdict director on behalf of defendant.

Entitled "Instruction No. A," defendant's affirmative converse states as follows: "Your verdict must be for Respondent if you believe Cornelius Henry Gross titled his bonds, automobile and bank accounts in joint names with his son James Edward Gross of his own free choice."

■■■ The language "if you believe" brands Instruction A as an affirmative converse. *Murphy v. City of Springfield*, 794 S.W.2d 275, 287 (Mo.App.1990) (citation omitted). "An affirmative converse instruction must submit an "hypothesized ultimate issue which, if true, would defeat plaintiff's claim."" *Shepard v. Ford Motor Co.*, 457 S.W.2d 255, 258 (Mo.App.1970) (quoting MAI 33.01).

"The function of the affirmative converse is to permit the defendant to submit his theory of the case without being required to directly negative the plaintiff's theory." [citation omitted]. The Notes on Use for MAI 33.05(1) [1988 New] state that "[t]he affirmative converse instruction should not be used to submit in the affirmative the same issue as has already been submitted in the verdict instruction."

*City of Springfield,* 794 S.W.2d at 287. We find that the offered instruction violated the rule that an affirmative converse may not be employed to converse a proposition made in the plaintiff's verdict directing instruction. *Id.* Defendant's converse instruction No. A submitted the very same issue as submitted in the verdict director, and was therefore improper. The proper form of converse instruction for the defendant to have offered would have been a true converse, not an affirmative converse. *Id.* Defendant's affirmative converse did not submit an additional issue, therefore the trial court properly refused to give the instruction. Point V denied.

## POINT VI: CONSTRUCTIVE TRUST

■ In point VI, defendant asserts the trial court erred in entering judgment on count II and setting up a constructive trust.

Defendant claims the establishment of the constructive trust subjected him to duplicative and inconsistent remedies. "The doctrine of inconsistent remedies applies when pursuit of one cause of action requires an affirmance of facts which are inconsistent with the pursuit of the second cause of action." *Perez v. Boatmen's Nat'l Bank of St. Louis,* 788 S.W.2d 296, 300 (Mo.App.1990) (citation omitted). The purpose of the doctrine is to prevent double recovery for a single wrong. *Id.* (quoting *Twellman v. Lindell Trust Co.,* 534 S.W.2d 83, 94 (Mo.App.1976)); *accord Petrie v. Le-Van,* 799 S.W.2d 632, 636 (Mo.App.1990) (quoting *David v. Hauschild,* 243 S.W.2d 956, 959[2–4] (Mo.1951)). The test to determine inconsistency in theories of recovery states: one theory must allege what the other denies, or that the theory of one must be repugnant to the other. *Johnson v. Hyster Co.,* 777 S.W.2d 281, 284 (Mo.App. 1989). In the case at bar, the trial court delivered two judgments on the plaintiffs cause of action for discovery of assets. The first judgment concerned count I, and the second count II. The court's decision on count II did not require an affirmance of facts which were inconsistent with count I. In fact, the court in count II relied on the facts established in count I. We also find that the two counts did not provide plaintiffs with a double recovery. The court ordered the same assets to be delivered in count II, as were ordered in count I. The judgments were merely alternative and consistent theories of recovery.

■ Defendant also claims that the evidence was insufficient to impose a constructive trust. We disagree. "A *breach* of a fiduciary or confidential relationship is itself a constructive fraud and no proof of actual fraud is necessary in order to establish a constructive trust in favor of the victim of the constructive fraud." *In re Estate of Newsum,* 798 S.W.2d at 170 (quoting *Pollock v. Brown,* 569 S.W.2d 724, 730 (Mo. banc 1978)). Consistent with *Thompson v. Williams,* 671 S.W.2d 442 (Mo.App.1984), we find sufficient evidence for the trial court to impose a constructive trust. When viewed in the light most favorable to plaintiffs, the evidence showed that Cornelius and defendant maintained a confidential relationship. Additionally, enough evidence was produced to prove that the assets were established in joint names only to facilitate the management of Cornelius' assets with the intent they would become a part of the estate. Defendant's "handling of those accounts contrary to that purpose and intent was a breach of fiduciary duty and constructive fraud as a matter of law." *Id.* at 446. Consequently, we affirm the trial court's imposition of a constructive trust. Point VI denied.

We reverse and remand.

STEPHAN and CRIST, JJ., concur.