Karen MACE, Personal Representative
of the Estate of Gladys Alma
Rupard, Respondent,

v.

David LOETEL, Appellant.

No. WD 64154.

Missouri Court of Appeals,
Western District.

June 30, 2005.

J. Michael Murphy, Liberty, for appellant.

Steven D. Wolcott, Liberty, for respondent.

Before BRECKENRIDGE, P.J., LOWENSTEIN and HARDWICK, JJ.

HAROLD L. LOWENSTEIN, Judge.

Karen Mace, personal representative of Gladys A. Rupard's estate, filed a petition

for discovery of assets, Section 473.340,[1] alleging that David Loetel unlawfully obtained money from Rupard prior to her death. The trial court entered judgment against Loetel, finding that he acquired $83,500 as "the result of either undue influence or fraudulent acts." Loetel now appeals.

### FACTS

Rupard was a ninety-four year-old widow who was befriended by Loetel, fifty-five, late in life.[2] Loetel had been familiar with the Rupard family since the early 1970s, as his parents were professional acquaintances with Rupard and her late husband. After Rupard's daughter passed away in 1996 or 1997, Loetel called to express his condolences and their relationship began to develop.

Shortly after Loetel's call, Rupard invited him to go to dinner with her and his mother. Loetel continued to spend time, alone, with Rupard after this outing. For instance, Loetel would take Rupard out to dinner or bring food to her apartment. He took her to the mall, to the doctor, and to the bank. Although he did not conduct any transactions for her while at the bank, Loetel paid Rupard's bills by writing out checks for her signature. Loetel also occasionally picked up groceries for Rupard and ran other miscellaneous errands.

Over the course of their relationship, Rupard transferred money to Loetel. The exact nature of these transfers, whether they were gifts or loans, is at issue in this case. Rupard transferred $40,000 to Loetel for what he claimed to be a birthday gift two months before his birthday. She also wrote an undetermined amount of checks to "cash," none of which were recorded in her checkbook register, and transferred them to Loetel.

Suspicion grew regarding Loetel's influence over Rupard and Rupard's unexplained diminution of assets. When friends and family expressed their concern, however, Rupard discontinued seeking their assistance with financial matters. For example, Dr. Donald Kuenzi was a long-time personal friend of the Rupard family. After Rupard's husband passed away, Dr. Kuenzi advised Rupard on investing her assets. When critical of Rupard and Loetel's "arrangement," Rupard stopped seeing Dr. Kuenzi both on a social and advisory basis. Likewise, Rupard stopped seeking guidance from her grandchildren after they questioned her monetary transfers to Loetel.

Rupard's former attorney, Thomas Hankins, was also concerned over what he understood to be this "very negative" relationship. Rupard contacted Hankins to revise her will on two occasions. In doing so, Rupard's proposed changes were handwritten onto a copy of an existing will. These revisions contained not only Rupard's handwriting, but also that of Loetel, and granted Loetel a greater portion of her estate. However, when Rupard met with Hankins outside of Loetel's presence, his proposed changes were disregarded and Loetel was actually excluded as a beneficiary. Rupard told Hankins that Loetel was "just paying attention to [her] for [her] money." She also told Hankins' legal secretary that funds "missing" from her bank account were the subject of a police investigation instituted by the Division of Aging.

Rupard passed away on March 7, 2002. After her death, the respondent, Mace, brought a petition to discover assets, seek-

---

1. All statutory references are to RSMo. (2000) unless otherwise indicated.

2. These ages represent Rupard and Loetel's respective ages at the time of Rupard's death.

ing to recover the assets she believed to have been wrongfully taken by Loetel. The trial court agreed and entered judgment in favor of Rupard's estate for $83,500.

## STANDARD OF REVIEW

■ On review of a court-tried case, this court will sustain the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The standard of proof in a discovery of assets proceeding is that of "clear, convincing, and cogent evidence." *In re Estate of Passman v. Graves,* 537 S.W.2d 380, 384 (Mo. banc 1976). As a result, in order for the trial court's judgment to be supported by substantial evidence, the evidence must also be clear, cogent, and convincing.

## DISCUSSION

In entering judgment against Loetel, the trial court found that "the transfer of funds from Gladys Rupard to David Loetel was the result of either undue influence or fraudulent acts by David Loetel." Because this court holds that Loetel did exert undue influence over Rupard, it need not address whether his actions were also fraudulent.

## I. UNDUE INFLUENCE

■ Loetel complains that there was insufficient evidence to support the trial court's finding of undue influence. Undue influence is defined as overpersuasion, coercion, force, or deception that deprives an individual of her free agency. *Robertson v. Robertson,* 15 S.W.3d 407, 413 (Mo. App.2000). A presumption of undue influence arises when substantial evidence shows: "(1) a confidential and fiduciary

relationship; (2) benefaction to the fiduciary; and (3) some additional evidence from which undue influence may be inferred." *Estate of Gross v. Gross,* 840 S.W.2d 253, 257 (Mo.App.1992). Here, the evidence offered by Mace entitled her to this presumption.

■ With respect to the first prong, a confidential relationship exists when one "relies upon and trusts another in regard to handling property and business affairs, thereby creating some fiduciary obligation." *Id.* (quoting *Godsy v. Godsy,* 504 S.W.2d 209, 212 (Mo.App.1973)). Proof regarding the handling of business affairs is not strictly necessary, however, as long as the contestant proves that the deceased took the individual alleged to have exercised undue influence into his or her confidence. *McIntosh v. Dowdy,* 625 S.W.2d 162, 164 (Mo.App.1981). Moreover, the parties' relations do not have to be "technically fiduciary"; indeed, a confidential relationship exists even when the parties' relations are "merely informal, whenever one trusts in and relies on the other." *Gross,* 840 S.W.2d at 257–58. (quoting *Hodges v. Hodges,* 692 S.W.2d 361, 377 (Mo.App.1985)).

## CONFIDENTIAL RELATIONSHIP

■ In this case, the evidence as a whole establishes that a confidential relationship existed between Rupard and Loetel. Rupard trusted Loetel enough to give him a key to her apartment. *See Vancil v. Carpenter,* 935 S.W.2d 42, 45 (Mo.App. 1996) (listing beneficiary having key to decedent's home as evidence of a confidential relationship). Loetel also wrote out checks for Rupard in helping her pay bills and his handwriting appeared in her checkbook register. *See id.* (finding confidential relationship where defendant "filled out checks for [the deceased] which [the deceased] would then sign and turn

over to the payee"). Loetel's handwriting also appeared on revisions to her will, wherein Loetel would receive more from Rupard's estate than already provided. Lastly, Loetel acted, at one time, as Rupard's attorney-in-fact pursuant to a power of attorney.[3] *Id.* ("The existence of a power of attorney is significant evidence that a confidential relationship has developed."). Prong one is, therefore, satisfied.

## BENEFACTION

■ Loetel does not challenge proof of the second prong. Although the exact amount is disputed, Loetel testified that he received at least $40,000 from Rupard. This admission constitutes sufficient evidence of benefaction to Loetel.

### ADDITIONAL EVIDENCE OF UNDUE INFLUENCE

■ Third, the record is replete with additional evidence from which undue influence may be inferred. As mentioned above, Loetel attempted to make revisions to Rupard's will. However, when Rupard met with her attorney concerning the requested revisions, outside of Loetel's presence, she stated that she did not want the changes granting Loetel a greater percentage to be made and, accordingly, they were not. Rupard also told her attorney that Loetel was "just paying attention to [her] for [her] money." On one occasion, Rupard told Loetel that she did not want to see him any longer.

In addition, Rupard also told a granddaughter that she was using her as an excuse not to loan any more money to Loetel although she continued to do so. The $40,000 sum that Loetel claims Rupard gave him for his birthday was given to him in June when, in fact, his birthday

was in August. When friends and relatives expressed concern to Rupard about Loetel's influence, she excluded them from further assisting her with her financial affairs and/or revoked their status as attorneys-in-fact. Because the record contains sufficient evidence to support a presumption of undue influence, which presumption was not overcome by the appellant's evidence, the trial court did not err in entering granting judgment in favor of Rupard's estate. Point denied.

## II. JUDGMENT AMOUNT

■ Loetel next contends that there was insufficient evidence to support the entire amount of the judgment. He claims that Mace did not offer clear, cogent, and convincing evidence to substantiate her allegation that he received the entire $83,500 from Rupard. This court agrees.

At trial, Loetel testified that he deposited checks received from Rupard into a specific account. Mace, therefore, introduced demonstrative exhibits that summarized relevant activity in Loetel and Rupard's respective bank accounts. Based on a comparison of the dates and amounts involved when funds were withdrawn from Rupard's account and when she wrote checks to "cash," to the dates and amounts of deposits made into Loetel's account, the respondent argued Loetel received the $83,500 Rupard was missing. This argument is problematic for two reasons.

First, although Loetel admitted he received money from Rupard, including the $40,000 check, the legal conclusion that he received the remaining judgment amount of $43,500 is based largely upon speculation. Specifically, the dates and amounts from the withdrawal/deposit comparisons are not exact.[4] Only in two instances are

---

3. Loetel was an attorney-in-fact, acting jointly with one of Rupard's granddaughters.

4. The following chart is a replication of Mace's evidence that compared debits in Rupard's account to credits in Loetel's account.

the transactions similar enough to actually prove Loetel received additional funds from Rupard.[5] Aside from these instances, which total $3,900, the only similarities are that (1) Loetel's deposits were made within at least eighteen days after Rupard withdrew funds, and (2) the transactions totals differ by a cumulative sum of approximately $13,400.

Secondly, no evidence was offered that could have otherwise explained the discrepancy between these transactions. No one testified that they had actually ever seen Rupard give Loetel money, so as to account for the delayed deposits and/or diminished sums. Moreover, Loetel testified that he neither spent a portion of the money before making any of the deposits in question nor received a sum of cash back. As a result, the mere similarity between the transactions does not constitute the clear, cogent, and convincing evidence needed to prove Loetel received the entire $83,500. Because Loetel admitted he received $40,000 and the record only supports a finding that he deposited $3,900 of funds withdrawn from Rupard's account, the amount of the judgment is amended to $43,900.

This court affirms the judgment of the trial court in favor of Mace but, pursuant to Rule 84.14, enters judgment in favor of the respondent, Mace, in the modified amount of $43,900.00.

All concur.

**GLADYS RUPARD'S CHECKS**

| Date of Check | Amount of Check | Date of Deposit | Amount of Deposit |
|---|---|---|---|
| 02/26/01 | $2,700.00 | 02/26/01 | $2,000.00 |
| 03/13/01 | $2,700.00 | 03/16/01 | $3,119.91 |
| 04/01/01 | $2,700.00 | 04/11/01 | $2,700.00 |
| 04/11/01 | $1,200.00 | 04/12/01 | $ 1200.00 |
| 04/21/01 | $2,700.00 | NONE | |
| 05/14/01 | $2,700.00 | NONE | |
| 06/22/01 | $2,700.00 | NONE | |
| 07/21/01 | $2,700.00 | 07/24/01 | $9,619.19 |
| 08/17/01 | $1,700.00 | NONE | |
| 09/01/01 | $1,700.00 | NONE | |

**GLADYS RUPARD'S BANK WITHDRAWALS**

| Date of Debit | Amount of Debit | Date of Deposit | Amount of Deposit |
|---|---|---|---|
| 09/26/00 | $2,500.00 | 10/04/00 | $4,340.00 |
| 11/07/00 | $4,500.00 | 11/25/00 | $5,300.00 |
| 12/18/00 | $4,500.00 | NONE | |
| 01/21/01 | $4,500.00 | NONE | |
| 02/18/01 | $1,700.00 | 02/26/01 | $2,000.00 |
| 03/18/01 | $ 800.00 | NONE | |
| 06/21/01 | $1,700.00 | NONE | |

5. Rupard's bank records she wrote a check to "cash" for $2,700 on April 1, 2001 and Loetel made a deposit in the same amount on April 11, 2001. Similarly, Rupard wrote a check to "cash" on April 11, 2001, for $1,200 and Loetel deposited $1,200 into his account on April 12, 2001.