In the ESTATE OF Thomas Edward DAVIS, Deceased.

Sherry Shamel, as Personal Representative of the Estate of Thomas Edward Davis, Petitioner,

v.

Donna Jean Root Soboy, Robert J. Davis, Diane Hawkins, Chris Davis, Apryl Keaty, Gail Williams, Shawn Miles Davis, Sidney Earl Davis, Roger Norman Davis, James Vincent Davis, Donald Dale Davis, Donna Linn, Barbara Halper, Lowell Dean Bittrich, Michelle Miller, Stacey Boston, Jeff Anderson, Shelby Johnson Devries, Roxanne Dewall, Denise Reuter, Gary Rishovd, Larry Rishovd, Sandi Williams, Clinton Rishovd, Glenn Gunderson, Francis Gunderson, and the unknown heirs, if any, of Thomas Edward Davis, George Sidney Davis, Evelyn Alice Rishovd, aka Evelyn Alice Davis, Adeline Davis Root, Sidney Moses E. Davis, Erwin Mathew Davis,

Mildred A.A. Davis, Ernest H.A. Davis, Jerald Ernest Davis, Donald E. "Red" Davis, Hazel M. Davis, Sharon Johnson, Agnes J. Davis, Oden Rishovd, Harry Rishovd, Alpha Lauderback, and Ida Gunderson, Respondents,

Sandi Williams, Francis E. Gunderson, Gary L. Rishovd, and Larry W. Rishovd, Respondents–Appellants,

v.

Sid Davis, Robert Davis, Donna Jean Soboy, Chris Davis, Apryl Keaty, Gail Williams, Shawn Davis, Diane Hawkins, Donna Linn, Barbara Halper, Roger Davis, James Davis, Don Davis, Lowell Bittrich, Jeff Anderson, Shelby Devries, Roxanne Dewall, Michelle Miller, Stacey Boston and Denise Reuter, Respondents–Respondents.

No. 28307.

Missouri Court of Appeals,
Southern District,
Division II.

April 7, 2008.

David R. Adair, Haden, Cowherd & Bullock, L.L.C., Springfield, MO, for Appellants.

Randall R. Sutter, Lebanon, MO, for Respondents.

J. EDWARD SWEENEY, Senior Judge.

This appeal involves the claims, as heirs at law, of Sandi M. Williams, Gary L. Rishovd, Francis E. Gunderson, and Larry W. Rishovd (collectively, the "Rishovd Family"), who are descendants from the maternal side of the Thomas Edward Davis family tree. Further, this appeal involves the claims, as heirs at law, of the paternal side of the Thomas Edward Davis family tree, hereinafter referred to as the "Davis Family." The trial court made ex-

tensive findings of fact and conclusions of law and entered a judgment against the Rishovd Family and for the Davis Family. The Rishovd Family appeals therefrom. For the reasons stated hereinafter, we conclude the evidence supports the trial court's findings and we affirm the judgment.

## STATEMENT OF FACTS

On January 3, 1903, George Sydney Davis and Agnes Moreau Davis were married. From this union, eight (8) children were born. George Sydney Davis (hereinafter referred to as "George"), never divorced Agnes Moreau Davis. On or about March 29, 1916, Evelyn Alice Rishovd, (hereinafter referred to as "Evelyn") was born. On February 3, 1944, Evelyn gave birth to Thomas Edward Rishovd (hereinafter referred to as "Tom") in Lady Smith, Wisconsin. Tom's birth certificate reveals his natural mother as Evelyn and does not list a natural father. George and Evelyn apparently were never legally married. George, Evelyn, and Tom moved to Conway, Missouri and resided in a house owned one-half by George and one-half by Evelyn, as tenants in common.

Though George and Evelyn were not married, they held themselves out to the public as husband and wife while George was alive and, together with Tom, held themselves out to the public as a functional family unit. On or about December 20, 1957, Tom legally changed his name to Thomas Edward (Rishovd) Davis.

In 1955, George and Evelyn took title to their home in Conway, Missouri as "George S. Davis and Evelyn Davis, his wife." During his lifetime, George was a U.S. Army veteran entitled to a military pension, and, upon his death was buried in the federal veteran's cemetery in Springfield, Missouri. Evelyn did not work outside the home while they lived together.

George died a resident of Laclede County, Missouri, on October 9, 1957. At the time of George's death, Tom was thirteen (13) years old. George died without a will. Therefore, his assets were disposed of according to the intestate laws of Missouri at that time. The probate of George's estate did not list Evelyn as his wife, nor did it list Tom as his son. Evelyn did receive George's estate through a claim against the estate for services rendered, which included George's share of the family home.

Evelyn died April 9, 2002. Tom died March 22, 2003, a resident of Laclede County, Missouri. He died intestate, leaving property subject to probate administration in Laclede County, Missouri.

The body of Thomas Edward Davis was exhumed for the purpose of DNA testing on August 9, 2005. DNA samples were also taken from James V. Davis and Robert J. Davis, who are individuals known to be paternally related to the late George Sidney Davis. The result of the DNA analysis by Genetic Technologies, Inc. was that the decedent Thomas Edward Davis's biological father was determined to be George Sidney Davis by a 99.97% probability of paternal relatedness.

In Appellants' first point relied on, they assert the trial court erred in entering judgment determining the Davis Family as heirs at law of the Thomas Edward Davis Estate because said judgment was not supported by evidence, in that the Davis Family failed to offer evidence that clearly and convincingly established that George did not refuse to support Tom.

In Appellants' second point relied on, they assert the trial court erred in entering judgment for the Davis Family as heirs at law of the Thomas Edward Davis Estate because said judgment was against the weight of the evidence, in that the

Davis Family failed to offer evidence that clearly and convincingly established that George did not refuse to support Tom.

The Davis Family presented multiple witnesses who testified on the issue of whether George supported Tom. Gary Simmons, Chester Massey, Wayne Whitehead, William Vincent, Shirley Warren, and Billy Bohannon grew up in Conway, Missouri and knew Tom for most of his life. Bob Ikerd was one of Tom's teachers in Conway. Barbara Rosenthal worked as a clerk at a store in Conway while Tom was growing up and knew Tom and his mother. Donna Soboy was George's granddaughter. Each witnesses' testimony will be discussed below.

## HISTORICAL BACKGROUND

Under the common law, an illegitimate child was held to be no child of either parent. *Cobb v. State Security Ins. Co.*, 576 S.W.2d 726, 733 (Mo. banc 1979).

■ The common law rule that an illegitimate child was no child at all and had no standing to inherit was eventually completely abrogated. Beginning in 1968, the United States Supreme Court held, in *Levy v. Louisiana*, 391 U.S. 68, 72, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), that illegitimate children could bring an action for the wrongful death of their mother; and, in *Glona v. American Guarantee & Liability Ins. Co.*, 391 U.S. 73, 75–76, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), that a mother could bring an action for the wrongful death of a son. Finally, in *Trimble v. Gordon*, 430 U.S. 762, 775–76, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the Court held that the Equal Protection Clause of the Fourteenth Amendment prohibited states from allowing an illegitimate child to inherit from the mother but denying inheritance from the father. The result is that states must treat illegitimate children the same as legitimate children.

Missouri followed with cases, including *Cobb*, 576 S.W.2d at 735–6, which held the parents of an illegitimate child had standing to bring an action for the wrongful death of their child, and *N.R. v. R.J. D.*, 588 S.W.2d 76, 79 (Mo.App. E.D.1979), which held that an action to declare the paternity of the illegitimate child survives the death of the father and can proceed after that occurrence.

At the time of George's death, the state of the law in Missouri was that an illegitimate child could inherit from his mother but not from the father. *See State v. White*, 363 Mo. 83, 248 S.W.2d 841, 843 (1952). The Missouri legislature changed the law in 1980 and replaced it with the law that now exists, Section 474.060,[1] which reads in pertinent part as follows:

2. In cases not covered by subsection 1 herein, a person born out of wedlock is a child of the mother. That person is also a child of the father, if either of the following occur:

(1) The natural parents participated in a marriage ceremony before or after the birth of the child, even though the attempted marriage is void;

(2) The paternity is established by an adjudication before the death of the father, or is established thereafter by clear and convincing proof, except that the paternity established under this subdivision (2) is ineffective to qualify the father or his kindred to inherit from or through the child, unless the father has openly treated the child as his, and has not refused to support the child.

## STANDARD OF REVIEW

■ In a court-tried case, the judgment will be sustained "unless there is no sub-

1. Unless otherwise noted, all references to statutes are to RSMO 2000.

stantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc.1976). Under Rule 84.13(d),[2] the appellate court shall give due regard to the opportunity of the trial court to have judged the credibility of the witnesses. Deference is given to the trial court's findings of fact, but an independent evaluation is made of conclusions of law. *Kessler–Heasley Artificial Limb Co., Inc. v. Kenney*, 90 S.W.3d 181, 184 (Mo.App.2002).

## POINTS RELIED ON

On appeal, the Rishovd Family argues that the trial court erred in finding that the Davis Family had established, by clear and convincing evidence, that George did not refuse to support Tom. For their second point, Appellants claim that even if the Davis Family presented sufficient evidence to meet the clear and convincing standard, the trial court still erred in its finding that George did not refuse to support Tom, because that finding was against the weight of the evidence. As Appellants' two points are so closely related, we address them together.

## BURDEN OF PROOF

For the Davis Family to inherit, they must meet the applicable requirements of Section 474.060. It is undisputed that George and Evelyn were never married, and there is no evidence they participated in a marriage ceremony. As a result, subsection (2) of Section 474.060 is applicable

2. Unless otherwise noted, all references to rules are to Missouri Rules of Civil Procedure 2007.

3. Subsection (2) of section 474.060 clearly requires the establishment of paternity after the death of the father by clear and convincing proof; however, the language is less than clear as to the standard of proof required to

to this case. In order to be eligible to inherit from Tom, the Davis Family needed to meet the three requirements under subsection (2) of Section 474.060, namely: (1) establish the paternity of George; (2) show that George openly treated Tom as his child; and (3) demonstrate that George did not refuse to support Tom. The language of the statute requires clear and convincing proof.[3]

The Missouri Supreme Court has defined the clear and convincing standard as meaning "that the court should be clearly convinced of the affirmative of the proposition to be proved. This does not mean that there may not be contrary evidence." *Grissum v. Reesman*, 505 S.W.2d 81, 86 (Mo.1974).

The Davis Family presented evidence on all three requirements, and the trial court found that each one had been met. On appeal, the Rishovd Family only challenges the trial court's finding that George did not refuse to support Tom.

Appellants recite that the judgment in favor of the Davis Family relies on the following Findings of Fact to support the element that George did not refuse to support Tom:

15. That during his lifetime, [George] was a U.S. Army war veteran who received a military pension during his lifetime, which he used to help support his family, and, upon his death, was buried in the federal veteran's cemetery in Springfield, Missouri.

prove the second and third requirements. We shall analyze the case as if the proof on all issues is clear and convincing but save for another day whether that burden is necessary on the requirements of proving that the father openly treated the child as his and whether father has not refused to support the child.

16. That [Evelyn] did not work outside of the home.

. . . .

19. That during his lifetime, the decedent's parents, [George] and [Evelyn], provided the decedent, [Tom], with everything he needed and none of the decedent's friends, family or members of the community were concerned that he was not being properly supported.

However, there are additional Findings of Fact to support the trial court's judgment:

12. That during the life of the decedent and while [George] was alive, [George] and [Evelyn] held out to the public as husband and wife and together with the decedent, held out to the public as a functional family unit.

13. That in 1955, [George] and [Evelyn] took title to their home in Conway, Missouri, as "George S. Davis and Evelyn Davis, his wife."

. . . .

17. That the decedent, [Tom], during his lifetime, held out to the public that his parents were [George] and [Evelyn].

The trial court made a specific finding in this case that it found the testimony of Bob Ikerd, Bill Bohannon, Barbara Rosenthal, Bill Vincent, Wayne Whitehead, Chester Massey, Garrie Simmons, Shirley Warren, and the deposition testimony of Donna Jean Farr Soboy to be credible. The credibility of witnesses in a court-tried case is a matter for the trial court. Rule 84.13(d)(2). *Estate of Pope v. Hook*, 670 S.W.2d 943, 947 (Mo.App.1984)

Witnesses Simmons, Massey, Whitehead, Vincent, and Warren were childhood friends of Tom. They testified that Tom called George and Evelyn "Mom" and "Dad[.]" They assumed George and Evelyn were married. To these witnesses, Tom was treated as a son by George. Witnesses Simmons and Massey testified to eating lunch at the Davis home. Mr. Whitehead testified Tom had pretty much what other kids had. Mr. Vincent testified Tom had as much as he (Vincent) did. Ms. Warren testified Tom was happy, didn't go hungry, and was well supported and loved by both parents.

The deposition testimony of Donna Jean Farr Soboy was offered. Ms. Soboy visited with George, Evelyn, and Tom in Wisconsin prior to their move to Conway, Missouri. George was Ms. Soboy's grandfather. She related how George treated Evelyn as his wife, and Tom called George "Papa." In her opinion, George treated Tom as his son.

There was also testimony from Bob Ikerd. Mr. Ikerd was a teacher and principal at Conway and also a postal clerk. It was his belief that George and Evelyn were married, and Tom, as a student, had everything he needed.

Further, there was testimony from Billy Bohannon. He testified that he and Tom walked to school together and that Tom had all of the normal school supplies. He also testified that George, Evelyn, and Tom held themselves out as a family.

Barbara Rosenthal testified that Tom was in school with her brother. She worked at the MFA Exchange where Tom later worked. She checked out George and Evelyn at the store. When George would be in the store, he would pay in cash. They would have all kinds of groceries in the cart, including children's foods. George, Evelyn, and Tom appeared to be an ordinary family.

There was testimony from witnesses Simmons, Massey, Warren, and Bohannon that Evelyn did not work outside the home.

Appellants challenge the trial court's finding that George "received a military

pension during his lifetime which he used to support his family." Exhibit 48 was a certificate of honorable discharge of George S. Davis from the U.S. Army given November 6, 1898. Exhibit 49 was a certificate from the Veterans Administration dated January 16, 1933, evidencing George S. Davis's entitlement to a pension. Exhibit 50 is a Spanish War Veterans' Manual. Appellants argue that the documents only show entitlement to a pension, not that George actually received one and used it for Tom's support.

The undisputed evidence is that George and Evelyn took title to their home in Conway, Missouri, as husband and wife. To provide a roof over Tom's head is evidence of support. The undisputed evidence is that Evelyn Davis did not work outside the home. There was evidence that she cooked, cleaned, laundered, baked, and sewed. George did not work.

Appellants attack the trial court's finding that George received a military pension during his lifetime which he used to support the family. Appellants contend that the exhibits and documents admitted only show that George was entitled to pension benefits, but not that such benefits were received by George or used to support Tom. Counsel for Appellants artfully cross-examined witnesses who admitted they did not know the financial resources of the Davis family. Counsel pointed out there was no evidence of bank account deposits or withdrawals. Appellants contend that there are no government checks which show deposits or some form of negotiation by George. Appellants point out Exhibit 50 was a pension handbook which showed that Evelyn and Tom, as an unmarried partner and illegitimate child, were not entitled to George's pension. Quite true. However, the question is did George receive a pension and if so, did he use it to support Tom?

The undisputed testimony was that Evelyn never worked outside the home. Tom was in the second grade at Conway during the 1951–1952 school year. George at that time, would have been a man some seventy-eight years of age. He did not work. George and Evelyn took title to their home as husband and wife on April 30, 1955. George, Evelyn, and Tom lived under one roof. The furnishing of a home is evidence of support.

Witnesses Warren and Soboy, however, testified about the pension. There was testimony from Ms. Warren that "he (George) got some kind of army military pension," which was admitted in evidence. There was this testimony from Donna Soboy: "My mother told me my grandfather [George] was supporting—that he bought the house and was supporting Tommy." This statement was admitted into evidence without objection. There was further testimony from Barbara Rosenthal, who worked at the MFA Exchange, that she checked out Evelyn and George. When George would be in the store, he would pay in cash. Ms. Rosenthal testified that the Davises would have all kinds of groceries including kids' food.

Having judged the credibility of the witnesses, the trial court could have inferred that Mr. Davis was entitled to a pension, that he received it, may not have maintained a bank account, but simply cashed his pension check and used it to support Tom. Certainly, the testimony of Mr. Warren and Ms. Soboy is evidence that he was receiving the pension.

Appellants cite *Mace v. Loetel,* 166 S.W.3d 114 (Mo.App.2005), in support of their position that this court should disregard the evidence of George's military pension being used to support Tom. As in this case, the standard of proof in *Mace* was that of clear and convincing evidence. *Mace,* 166 S.W.3d at 117. However, *Mace*

was a discovery-of-assets case, not a determination-of-heirship case. *Id.* at 115–16. The issues in *Mace* dealt with dates and amounts from withdrawal/deposit comparisons. *Id.* at 118–19. It resulted in a damage award being reduced from $93,500.00 to $43,900.00. *Id.* at 119. This is not a discovery-of-assets case. This is one about refusing the support of a son.

■ Based on the above evidence, we find that there was substantial evidence to support the trial court's finding that the Davis Family had shown, by clear and convincing evidence, that George did not refuse to support Tom. However, the Rishovd Family also argues that the finding that George did not refuse to support Tom was against the weight of the evidence.

Appellants allege that the trial court inaccurately portrayed the testimony of Shirley Warren when it relied on her testimony to support its finding that George used his pension to support Tom. Shirley Warren testified that George received a military pension and that Tom was very well supported. On cross-examination, Warren admitted that she herself had no knowledge of George's finances, but went on to state that she knew "[j]ust what my mother told me. And she told me that there might have been an—they got some kind of estate a long time ago or whatever, and then she told me that [George] got a— he got a pension." Appellants did not object to Warren's testimony as hearsay, therefore it was properly before the trial court. *Schindler v. Schindler,* 209 S.W.3d 35, 39 (Mo.App.2006).

Similarly, the Rishovd Family challenges the trial court's reliance on Donna Soboy's testimony. They argue that Soboy's testimony "does nothing more than speculate, assume and surmise as to the financial support of Tom by George." Soboy testified that, although she never saw George give Tom money or had personal knowledge of George and Evelyn's finances, Soboy's mother had told her that George's pension went to supporting Tom. Again, this testimony was produced during cross examination by the Rishovd Family and, because no objection was made, it was properly admitted as evidence for the trial court to consider. *Id.*

Witnesses Simmons and Massey testified to eating at the Davis home. Mr. Whitehead testified Tom had pretty much what other kids had. Mr. Vincent testified that Tom had as much as he (Vincent) did. Ms. Warren testified Tom was happy, he didn't go hungry, and was he well supported and loved by both parents. Mr. Ikerd testified Tom had everything he needed as a student. Mr. Bohannon testified Tom had all of the normal school supplies. Ms. Rosenthal would check out George and Evelyn when they bought groceries, and George paid in cash.

The Rishovd Family offered in evidence the Probate File of the George Sidney Davis Estate. It showed Evelyn and Tom were not listed as a surviving spouse or son. Evelyn did file a claim against George's estate. Evelyn did receive George Sidney Davis's estate as a result of her claim for services. The Rishovd Family's counsel, through cross-examination, established that the witnesses did not know the financial status or resources of George, Evelyn, and Tom, nor about their banking transactions, if any. However, the facts relied upon by the trial court and the evidence from the nine (9) lay witnesses, together with the documents admitted into evidence, established by the overwhelming weight of the evidence that George Davis did not refuse to support Tom.

It is clear that the trial court's finding that George did not refuse to support Tom was not against the weight of the evidence. Appellants' points are denied.

The judgment of the trial court is affirmed.

LYNCH, C.J., and RAHMEYER, J., concur.